MARY KLEMENT ET AL., RELATORS, v. DELAWARE RIVER JOINT TOLL BRIDGE COMMISSION PENNSYLVANIA-NEW JERSEY, RESPONDENTS.

Argued January 20, 1938—Decided March 18, 1938.

For the relators, *Robert B. Meyner.*

For the respondents, *John H. Pursel.*

The opinion of the court was delivered by

PARKER, J. Eight different ownership interests are represented in this case by twelve different plaintiffs, wives and husbands being joined in several instances. We take it that this joinder of the various interests is predicated on section 4 of the Practice act of 1912 which provides that persons interested in causes of action may join if the causes of action have a common question of law or fact and arose out of the same transaction or series of transactions. It is not entirely clear that this statute is legally applicable to proceedings in *mandamus,* but no objection is made, the cases are all in *pari materia,* and the matter is alluded to mainly with regard to its ultimate possibilities in this particular litigation.

The various relators are the owners of residential properties in Phillipsburg in the immediate vicinity of a bridge across

the Delaware river which has been carried above grade over some of the local streets and connects above grade with a part of the state highway system. The bridge and the state roads are of recent construction, and in connection with that construction, and speaking generally, there were two important changes in the terrain. One change was that several minor streets in the neighborhood of the houses where the relators lived have been closed to public use. The second important change is that the State Highway, as it will be called herein for convenience, which lies between the properties of the relators and the Delaware river, is, as has been said, some twenty or thirty feet above the natural grade on an embankment at this point, the slope of which embankment stretches from the State Highway towards the rear line of the properties of the relators and has the effect of cutting off their view of the river and the country on the other side. This they claim is a substantial damage to their properties. Inasmuch as all the houses occupied by the relators face away from the river, the view that they have in the direction of the river is necessarily from their back windows or back yards; but this goes only to the *quantum* of the alleged injury sustained.

In this general state of affairs the relators claim that they are entitled to be paid for such damages as their respective properties have sustained because of the two general alterations just described. They demanded that the respondent the joint toll bridge commission, which has powers of condemnation, should institute proper proceedings for the ascertainment of these damages. This was refused on the fundamental ground that the relators had sustained no damages for which they were legally entitled to compensation, and this question of law is the controlling issue in the present case. There appears to be no dispute whatever as to the physical facts which are stipulated in connection with maps and photographs, so the inquiry is, do relators stand on solid legal ground in insisting that this power of condemnation which the respondent possesses must, as a matter of law, be exercised with a view of ascertainment and payment of the alleged damages in question.

If this were an ordinary case of a state highway or of a state agency or a private corporation endowed with a power of eminent domain, it is quite clear, if not indeed fundamental, that no damages have been sustained for which the parties damaged are legally entitled to compensation.

As to the embankment, it is located altogether upon lands owned or controlled by the respondent; and by its construction the relators have not suffered any damage different in essence from that which they would suffer if a private owner of that land had built a high building thereon within his proper lines and thereby interfered with their view and access of air, &c. *Hayden* v. *Dutcher,* 31 *N. J. Eq.* 217; *Engel* v. *Siderides,* 112 *Id.* 431; *Harwood* ads. *Tompkins,* 24 *N. J. L.* 425. Authorities might readily be multiplied.

As to the changes of grade and vacation of streets, it is settled, in the absence of some statute, that a landowner who has been actually damaged sustains no legal injury for which he is entitled to compensation. On this phase of the case the respondent properly cites such cases as *Cooper* v. *State Highway Commission,* 6 *N. J. Mis. R.* 723; *Burns Holding Corp.* v. *Same,* 8 *Id.* 452; *affirmed,* 108 *N. J. L.* 401, and *Sommer* v. *Same,* 106 *Id.* 26. In regard to the vacation of streets, a leading case, and one sufficient for present purposes, is *Newark* v. *Hatt,* 79 *Id.* 548, where (at *p.* 550), the late Mr. Justice Bergen, speaking for the Court of Errors and Appeals, said, in regard to the vacation of a street, "the right of the state to destroy public improvements of this class without compensation is not limited by the constitution, and except for the statute, as expressed in the charter of the city, this street could have been vacated without the slightest consideration of its effect upon any land lying along it, or the payment by the city of compensation to any landowners for damages." To sum up on this phase of the matter, it may be said generally that in the absence of a statute, these relators would have no case for relief on the present state of facts. But there is a statute, and one that in our estimation is plain and controlling. The respondent in this case operates and has made the changes in question under and by virtue of

chapter 215 of the laws of 1934 (*Pamph. L., p.* 498), being "An act providing for joint action by the State of New Jersey and the Commonwealth of Pennsylvania in the administration, operation and maintenance of bridges over the Delaware River," &c. By that act it is provided, among other things, that the commission created thereby, and which is the respondent herein, shall have power to acquire real property (article II (j), page 501, and article II (m), page 502), to exercise the power of eminent domain. See, also, page 503 where a manner of condemnation is indicated based on chapter 297 of *Pamph. L.* 1912. Referring then to the statute of 1912 (*Pamph. L., p.* 527) *Cum. Supp. Comp. Stat.* 1924, *p.* 206, we find by section 3 as amended in 1919 (*Pamph. L., p.* 151) that the joint commission, acting as a judicial body, having viewed the premises or examined the property, shall hear all parties interested and their witnesses, and shall estimate the value of the property taken including any easement, rights or franchises incident thereto, as well as the damages for property taken, injured or destroyed. This last phrase is significant and important. It constitutes a statutory recognition (or creation, if the phrase be preferred), of the right of a landowner to compensation for injury to his property which, in the absence of a statute, would not exist. This was the situation in *Newark* v. *Hatt, supra,* where the city charter required damages to be paid for the vacation of a street. The phrase is embedded in an amendment to the constitution of Pennsylvania, and the pertinent clause will be found quoted in *Chester County* v. *Brower,* (a Pennsylvania case), 12 *Atl. Rep.* 577. This was recognized and enforced by the Supreme Court of the United States in *Pennsylvania Railroad Co.* v. *Miller,* 132 *U. S.* 75 (at *p.* 82). In the Chester case there were abutments of a bridge in front of the plaintiff's house. In the Miller case there was an iron pillar and an abutment for a bridge as well.

It is suggested for the respondents that by the statute of of 1928 (*Pamph. L., p.* 389) it was provided in section 4 that the commission may acquire land, &c., in accordance with the Eminent Domain act of 1900; and assuming this to be still

in force, the point is made that there are two alternative methods of acquiring property by the exercise of eminent domain, one under the act of 1928, and the other under the act of 1912 as amended in 1919; and that *mandamus* should not be allowed where these alternative methods exist. To this we think there are two answers. The first answer is, that if the relators appear to be in fact injured by reason of the vacation of streets, changes of grade, erection of embankments, &c., as appears to be the case in view of the act of 1912, *supra*, this court may, and should, direct at least that suitable proceedings be taken for the ascertainment of those damages without deciding whether the one statutory method or the other should be pursued. The second answer is, that, as we view the matter, the act of 1928 relied on by the respondents, has been superseded by that of 1934 adopting the procedure of the act of 1912, and is therefore out of the case.

There is a good reason for the inclusion in the statute of this right to damages for property taken, injured or destroyed. As has been said, it is part of the constitution of Pennsylvania; and obviously the intent of the framers of the act of 1934, which is concurrent legislation of both states, was that the same rights of property and of damages for injuries to property should obtain in both states. We are therefore clear that a writ of alternative *mandamus* should go; and inasmuch as the facts are all stipulated, there seems to be no reason why a record should not be made up at once based upon those facts and a judgment pronounced thereon according to the views that have been above expressed. But reverting to the thought first above expressed, as to several relators asserting their several rights in one action, it would seem that if this action proceed in that form it would at least create much confusion in the record. Hence, as a matter of practice, there should be an alternative writ relating to each separate property; or the parties may agree to prosecute one writ to judgment as a typical case, the others to be controlled by the result. This last is of course by way of mere suggestion, and in the interest of economy of effort and of expense.