DORIS N. MILLER; STEPHEN K. SULLIVAN AND CATHERINE D. SULLIVAN, HIS WIFE; MARTHA W. RUNTON; LAWRENCE HELGESEN AND DELIA HELGESEN, HIS WIFE; HUDSON CITIES HOLDING COMPANY, A CORPORATION OF NEW JERSEY; SARAH DUFFY, ADMINISTRATRIX OF THE ESTATE OF CATHERINE BOOTH; EDITH VAN GELDER; DOROTHEA ROBINSON AND WILLIAM ROBINSON, HER HUSBAND; LENA GOLDBERGER AND CHARLES S. GOLDBERGER, HER HUSBAND; RACHELE MAROTTA; INDIVIDUALLY AND SEPARATELY, PLAINTIFFS, v. THE PORT OF NEW YORK AUTHORITY, A BODY CORPORATE AND POLITIC; UNDERPINNING AND FOUNDATION COMPANY, A CORPORATION; GEORGE M. BREWSTER AND SON, INC., A CORPORATION; JOSEPH L. SIGRETTO AND SONS, INC., A CORPORATION; MASON & HANGER CO., INC., A CORPORATION; L. P. O'CONNOR, INC., A CORPORATION, DEFENDANTS.

Decided November 20, 1939.

For the plaintiffs, *Stephen K. Sullivan, Jr.*

For the defendant The Port of New York Authority, *Russell E. Watson* (*C. Thomas Schettino,* of counsel).

For the defendant Underpinning & Foundation Company, *James J. Carroll.*

For the defendant Mason & Hanger Company, Inc., *Vanderbach & Vanderbach.*

For the defendants George M. Brewster and Son, Inc., Joseph L. Sigretto and Sons, Inc., and L. P. O'Connor, Inc., *Carey & Lane.*

ACKERSON, S. C. C. The fourteen plaintiffs (husband and wives being joined in several instances), represent ten different ownership interest in ten separate and distinct pieces of real property adjacent to the Midtown Tunnel in Hudson county, also known as the Lincoln Tunnel. These owners have brought this action against the Port of New York Authority (hereinafter called the "Authority"), under whose power said tunnel was constructed, as well as against several contractors who were instrumental in its construction under agreements with the Authority.

The complaint, consisting of three counts, is based upon two theories. The first count is against the Authority alone upon the theory that in proceeding with the construction of the tunnel this defendant took plaintiffs' said properties in whole or part, or the diminution of their values, contrary to our State Constitution without paying just compensation therefor. In effect the charge is a taking of private property for a public use without just compensation, since it is not alleged that said defendant was not authorized to build the tunnel or take the properties for that purpose.

The second and third counts are against all of the defendants (including the Authority), and are rested upon the theory of negligence with respect to blasting operations in connection with the construction of the tunnel.

It is to be noted, however, that two of the plaintiffs, Stephen K. and Catherine D. Sullivan, ask no recovery against the Authority, although seeking it against the other defendants.

The Authority now moves to set aside the service of the summons and complaint as to it, primarily upon the basic ground that it acted in the premises as the *alter ego* of the States of New Jersey and New York and is, therefore, clothed

with the sovereign immunity of each of said states from suits in their own courts; that such immunity has not been waived nor has consent been authorized or given to a suit such as this, and that this defendant in such capacity is not liable for torts arising out of the performance of its functions.

It is, of course, fundamental that sovereign states cannot, without their consent, be sued in their own courts, where no provision to the contrary exists in their constitutions or by special enactment. *American Dock, &c., Co.* v. *Trustees of Public Schools,* 32 *N. J. Eq.* 428; *affirmed,* 35 *Id.* 181 (at *p.* 252); *Curtis & Hill Gravel and Sand Co.* v. *State Highway Commissioners,* 91 *Id.* 421; 111 *Atl. Rep.* 16; *De Santis et ux.* v. *Delaware, Lackawanna and Western Railroad Co.,* 11 *N. J. Mis. R.* 22, 25-26; 165 *Atl. Rep.* 119; *Lodor* v. *Baker,* 39 *N. J. L.* 49; *Stale* v. *Kirby,* 5 *Id.* 982; *Locke* v. *State,* 140 *N. Y.* 480; 25 *R. C. L.* 412, § 49; 42 *A. L. R.* 1465.

It becomes necessary, therefore, in determining the problems thus presented, to decide in the first place whether the Authority is a direct state agency, *i. e.,* the *alter ego* of the state, or whether it is a private or *quasi*-public corporation, such as a railroad, telegraph, telephone, canal or bridge company, endowed with the state's prerogative of eminent domain, but not clothed with the state's immunity from suit.

The construction, maintenance and operation of highways, bridges and tunnels is one of the primary governmental functions of the states. *Atkin* v. *Kansas,* 191 *U. S.* 207, 221, 222; *Dodge County Commissioners* v. *Chandler,* 96 *Id.* 205; *Sherman* v. *United States,* 282 *Id.* 25, 29. A state may create an agency for the purpose of carrying out a state duty or function. *Curtis and Hill Gravel and Sand Co.* v. *State Highway Commissioners, supra;* approved by the Court of Errors and Appeals in *Strobel Steel Construction Co.* v. *State Highway Commissioners,* 120 *N. J. L.* 298; 198 *Atl. Rep.* 774: *State Highway Commissioners* v. *Elizabeth,* 102 *N. J. Eq.* 221, 227; 140 *Atl. Rep.* 335; *affirmed,* 103 *N. J. Eq.* 376; 143 *Atl. Rep.* 916; *New Jersey Interstate Bridge and Tunnel Commission* v. *Jersey City,* 93 *N. J. Eq.* 550; 118 *Atl. Rep.* 264; *Gaynor* v. *Marhon,* 268 *N. Y.* 417. A suit against such

a state agency cannot be maintained if the effect of such action is a suit against the state—unless, of course, the state has consented. *Strobel Steel Construction Co.* v. *State Highway Commissioners, supra.*

The history of the creation of the Authority with a statement of the several legislative enactments in furtherance of the objects thereof, and of the powers conferred by these enactments and by the compact of April 30th, 1921, between New York and New Jersey, will be found in *Gerhardt* v. *Helvering,* 304 *U. S.* 405, from which it appears that the Authority is a bi-state corporation, created by compact between the two states, which directed the Authority to recommend a comprehensive plan for improving the port of New York and facilitating its use, by the construction and operation of bridges, tunnels, terminals and other facilities. Pursuant to further legislation of the two states, the Authority has constructed interstate tunnels and bridges financed in large part by funds advanced by the two states and by the Authority's issuance and sale of its bonds. It collects tolls for the use of such facilities, but it has no stock or stockholders and is owned by no private persons or corporations. Its projects are operated in behalf of the two states and in the interest of the public and none of its profits enure to the benefit of private persons. Its property and the bonds and other securities issued by it are exempt by statute from state taxation. The statutes relating to its projects declare that they are all for the benefit of the people of the two states, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and that the Authority shall be regarded as performing a governmental function with reference to said projects and shall be required to pay no taxes or assessments upon any property acquired by it for the purposes of its creation. Furthermore by statute (chapter 5, *Pamph. L.* 1931 (*N. J. S. A.* 32:1-141 to 32:1-143); chapter 48, *Pamph. L., N. Y.* 1931), the Authority's surplus revenues are subject to disposition by the states. It is to be noted also that the treaty of 1921 which created the Authority does not provide that it shall be subject to suit.

If the construction of the Lincoln Tunnel had been intrusted to one of the conventional administrative agencies of the state, such as the State Highway Commission, there is no doubt that the state itself would be regarded as the operative agency. *Curtis & Hill Gravel and Sand Co.* v. *State Highway Commissioners, supra; State Highway Commissioners* v. *Elizabeth, supra; New Jersey Interstate Bridge and Tunnel Commission* v. *Jersey City, supra; Stephens* v. *Commissioners of Palisades Interstate Park, supra; Sherman* v. *United States, supra; The Onteora,* 298 *Fed. Rep.* 533; *Highway Commission of Wyoming* v. *Utah Construction Co.,* 278 *U. S.* 194; *People, ex rel. Bridge Authority* v. *Davis,* 277 *N. Y.* 292, 299. It is equally clear that if the state had done so its mantle of immunity would cover such agency, for in the case of a state instrumentality as distinguished from that of a public subdivision of a state, the question whether the particular functions exercised are governmental or proprietary is an irrelevant one. For when the question of immunity of a state, considered as a sovereign, arises, the nature of the particular activity cannot be inquired into. *Ex parte State of New York, No.* 1, 256 *U. S.* 490; *Ex parte State of New York, No.* 2, 256 *Id.* 503; *Murray* v. *Wilson Distilling Co.,* 213 *Id.* 151; *The Onteora, supra.*

Since, had the undertaking been carried on by one state or the other, either directly, or through an established state agency, the immunity of sovereignty could be invoked, the result must be the same where both states jointly undertake the work by means of a distinct entity acting in behalf of both sovereign states. Plainly the development of the port of New York could not have been adequately dealt with excepting through the co-ordinated efforts of New Jersey, New York, and the United States. Of necessity a body external to the two sovereign states had to be created—in no other way could the two act in complete concert—and it is unimportant whether it is denominated a corporation or an authority or a commission. *People, ex rel. Bridge Authority* v. *Davis, supra; New Jersey Interstate Bridge and Tunnel Commission* v. *Jersey City, supra* (at *p.* 552). In the latter case, involving the construction of the Holland Tunnel by a

similar state agency, with which the Authority is now merged, the court said, concerning the status of such agency:

"This great work of constructing tunnels under the Hudson river is the work of the state itself, for the state, wherever it prosecutes any great governmental purpose, either in its own name or by and in the name of its appropriate agent, is the actor in carrying the particular purpose into execution * * *."

But it may be claimed that the case of *Gerhardt* v. *Helvering, supra,* establishes the point that the Authority is not an agency of the state. But that case relates to the position of the state within the framework of the federal system and has no application to the point we are considering. The question there was not whether the activities of the States of New Jersey and New York, through their Port Authority, were of a governmental or proprietary nature; but whether in the entirely different sphere of federal taxation, the salaries of employes of the Authority were exempt from the federal income tax. A negative answer was given on the ground that an income tax on the employes 'does not curtail any of those functions (of the states) which have been thought hitherto to be essential to their continued existence as states." 304 *U. S.* 405, 520. From the point of view of the state, it is for the state itself, within constitutional limits, to decide what functions to undertake. The distinction is succinctly stated in *Allen* v. *Regents,* 304 *U. S.* 439, where the court said that "when a state embarks in a business which would normally be taxable, the fact that in so doing it is exercising a governmental power does not render the activity immune from federal taxation."

Since the Authority is undoubtedly a direct state agency, exercising an essential governmental function, and is, therefore, an *alter ego* of the state, it follows that the present action is, in effect, a suit against the state itself which would, as we have seen, be clothed with sovereign immunity, unless a waiver or consent can be found in our State Constitution or in some special enactment.

The compact of 1921 between the states, which created the Authority, signifies no intention to permit the agency to be

sued, and the research of counsel and the court has failed to disclose any authority upon which a consent to be sued, or a waiver of immunity from suit, could be based, unless arising from the limitation upon the right of eminent domain contained in section 16 of article I of our State Constitution, and *R. S.* 32:1-132; 32:1-135 (*N. J. S. A.* 32:1-132; 32:1-135), enacted to carry the aforesaid constitutional provision for compensation into effect in so far as the activities of the Authority are concerned. This constitutional provision is as follows:

"Private property shall not be taken for public use without just compensation, but land may be taken for public highways as heretofore until the legislature shall direct compensation to be made."

Subsequent legislation pertaining to highways generally, as well as the above mentioned legislation applying specifically to the Authority, have, of course, extended the constitutional provision to highways, bridges and tunnels.

*R. S.* 32:1-132 (*N. J. S. A.* 32:1-132), *supra,* provides that if the Authority "shall find it necessary or convenient to acquire any real property as herein defined in this state" for the objects of its creation, and "is unable to agree" with the property owner for such acquisition, it may "acquire such property * * * by condemnation or the exercise of the right of eminent domain;" and by *R. S.* 32:1-135 (*N. J. S. A.* 32:1-135), the term "real property" as used in this act is defined "to include lands, * * * and also claims for damage to real estate."

The aforesaid constitutional provision and legislation, however, do not apply to damage to real estate due purely to negligence in the construction of a project for public use. The law, in estimating compensation for lands taken, wisely limits the issue to damages arising from the taking, and such damages as are necessarily incident to the use of the lands for the proposed purpose of the taking, leaving injuries resulting from negligence in construction or use in the same status as at common law. *Delaware, Lackawanna and Western Railroad Co.* v. *Salmon,* 39 *N. J. L.* 299 (at *p.* 313); *Van Schoick* v. *Delaware and Raritan Canal Co.,* 20 *Id.* 249

(at *p.* 254); 20 *C. J.* 778, § 233. Nor does the phrase "claims for damages to real estate," appearing at the end of section 135, *R. S.* 32:1 (*N. J. S. A.* 32:1-135), above quoted, apply to damages arising out of such negligence. It only enlarges the scope of the Eminent Domain act in this instance to include, besides damages for the lands taken, also damages necessarily incident to the use thereof for the purpose taken, including such consequential damages to other real estate as might result from the closing of streets, obstructions to view and limitations of light and air by the public use of the lands taken, which could not theretofore be included in condemnation proceedings. *Klement* v. *Delaware River Joint, &c., Commission,* 119 *N. J. L.* 600; 197 *Atl. Rep.* 896; *Van Schoick* v. *The Delaware and Raritan Canal Co., supra* (at *pp.* 253, *et seq.*).

Since, therefore, at common law, the state, or a direct state agency charged with public duties in performing an essential governmental function for and by direct mandate of the state, could not be held liable for negligence in the performance thereof because of sovereign immunity, and the states of New Jersey and New York have not waived such immunity, or consented to be sued (*Stephens* v. *Commissioners of Palisades Interstate Park, supra,* and *The Onteora, supra*), it follows that the second and third counts of the complaint herein, which are based upon the theory of negligence, cannot be maintained against the Authority. This identical question was before the courts of New York State in three recent suits to recover from the Authority damages alleged to have resulted from negligence in blasting and other operations in the construction of said tunnel, and it was uniformly held that the Authority could not be sued therefor on the ground above stated. *Pink, Superintendent,* v. *The Port of New York Authority et al., N. Y. L. J., February 3d,* 1938, *Vol.* 99, *No.* 28; *Voorhis et al., Trustees, &c.,* v. *Cornell Contracting Co. et al.,* 10 *N. Y. Supp.* (2d) 378; *N. Y. L. J., December 17th,* 1938, *Vol.* 100, *No.* 140; *Le Beau Piping Corp.* v. *The City of New York et al., N. Y. L. J., December 21st,* 1938, *Vol.* 100, *No.* 143. Of course the same rule would not apply to *quasi*-public corporations, such as railroad and canal

companies, which may possess the right of eminent domain under another section of the Constitution (*Pamph. L., p.* 8, § 7, *art.* 4), but are not endowed with sovereign immunity from suit. See *Lackawanna and Western Railroad Co.* v. *Salmon, supra.*

But the plaintiff insists that the first count of their complaint, which is against the Authority alone, is rested upon a firmer foundation. It alleges "that in proceeding with the construction of the tunnel, and work connected therewith, the said defendant, either in all or part, destroyed or demolished the value of the plaintiffs' properties" (being real estate located as listed in Schedule A), "depriving them and each of them of the use of their properties and taking said properties or the diminution of said properties' values contrary to the Constitution of the State of New Jersey without paying the said plaintiffs their just compensation therefor," and that "on account of the method and manner of the defendant's unlawful proceeding hereinbefore set forth, damages in the amounts hereinafter set forth are claimed and demanded by the plaintiffs."

In the first place it is important to notice that this last allegation: "On account of the method and manner of the defendants' unlawful proceeding hereinbefore set forth, damages * * * are claimed and demanded," can refer only to the preceding charge that this defendant "either in all or part, destroyed or demolished the value of plaintiffs' properties, * * *, contrary to the Constitution of the State of New Jersey without paying the said plaintiffs their just compensation therefor."

Inasmuch, however, as this defendant, as we have seen, is authorized by law to acquire, or even damage, real estate, if necessary or convenient for the construction of the tunnel in question (*R. S.* 32:1-132 and 32:1-135; *N. J. S. A.* 32:1-132, 32:1-135, *supra*), and it is not alleged that the tunnel itself was being illegally constructed, or that there was anything illegal in the "method and manner" of taking plaintiffs' properties, "in proceeding with the construction of the tunnel," other than failure to pay therefor, it necessarily follows that the "unlawful proceeding" upon which

this count is based can refer only to the failure to pay plaintiffs "their just compensation therefor."

But there is nothing in the compact between the states creating the Authority, or in the statutes governing its operations, which requires the actual payment of compensation before, the taking, acquiring or damaging of private property required for its public purposes. On the contrary the statutes in question recognize the right to take possession of the property or rights sought to be condemned, previously to the actual payment of the damages. Nor is there anything unconstitutional in such a course of proceedings. There is a marked distinction between the procedure prescribed by the constitution of this state for taking the property of the citizen by the state, or a direct agency of the state for public use, and that provided when, for such use, it is taken by a private corporation. The former case is provided for in section 16, article I, its language being, "private property shall not be taken for public use, without just compensation;" and the latter is regulated by *Pamph. L., p.* 8, § 7, *art.* 4, in these words, viz.: "Individuals or private corporations shall not be authorized to take private property for public use, without just compensation first made to the owners." It is only where the right of eminent domain is exercised in favor of an individual or a private corporation that compensation must precede the taking. Where the state is concerned there may be instances where the exigencies are such that it would effect great inconvenience to delay until the judicial proceedings taken to fix the compensation are determined. In view of this, and the fact that, when the state or a municipality is the party condemning, there is supposed to be ample security for the payment of the award, actual payment is not a condition precedent to the taking. It is sufficient if provision is made by law by which the party can obtain compensation, and that an impartial tribunal is provided for assessing it. *Wheeler* v. *Essex Pub. Road Board,* 39 *N. J. L.* 291 (at *p.* 297); *Loweree* v. *City of Newark,* 38 *Id.* 151 (at *p.* 154); *Butler* v. *Sewer Commissioners,* 39 *Id.* 668 (at *p.* 671). Such provision is made in the act authorizing the construction of the Lincoln Tunnel, *R. S.* 32:1-132, where condemnation

is provided for under and pursuant to the provisions of the act entitled "An act to regulate the ascertainment and payment of compensation for property condemned or taken for public use" (*Revision of* 1900), *R. S.* 20:1-1 to 35, inclusive, except as other provision is made by the terms of the act providing for the construction of said tunnel.

Where, as in the case *sub judice,* the statute provides a definite and complete remedy for obtaining compensation, this remedy is exclusive, in order that there may be no unnecessary limitation upon sovereignty. 20 *C. J.* 1152, § 517; *Van Schoick* v. *The Delaware and Raritan Canal Co., supra* (at *p.* 255); *Goodavage* v. *State Highway Commission,* 96 *N. J. Eq.* 424, 427; 125 *Atl. Rep.* 919. And it makes no difference in this respect that the statute provides for the initiation of condemnation proceedings; by the condemnor only, if the owner is free to coerce payment by *mandamus.* As was said in the case of *Butler* v. *Sewer Commissioners, supra* (at *p.* 671), referring to the remedy of the property owner:

"We have seen that the legislature is obliged to indicate a tribunal for the establishment of the amount of compensation. * * * That it must be a remedy to which the party can resort of his own motion, or compel the movement of the municipality by *mandamus. People* v. *Heyden,* 6 *Hill* 361; *Cooley Const. Lim.* 56."

It is the duty of the Authority, under the aforesaid statute, as the agency acting for the state, to initiate condemnation proceedings in order that proper compensation may be fixed and paid to the plaintiffs, if in fact their properties have been taken, destroyed or damaged for public purposes, but this duty is a ministerial one for the performance of which *mandamus* is the appropriate remedy, and so it has been uniformly held in this state. *Haycock* v. *Jannarone,* 99 *N. J. L.* 183; *Goodavage* v. *State Highway Commission, supra; State Highway Commission* v. *Elizabeth, supra; Klement* v. *Delaware River Joint, &c., Commission,* 119 *Id.* 600; 197 *Atl. Rep.* 896: *affirmed,* 123 *N. J. L.* 197; 8 *Atl. Rep.* (2d) 563; *Butler* v. *Sewer Commissioners, supra* (at *p.* 671); *Wheeler* v. *Essex Road Board, supra* (at *p.* 298); *Klaus* v.

*Jersey City,* 69 *N. J. L.* 127; 54 *Atl. Rep.* 220; *Budd* v. *Railroad and Trans. Co.,* 14 *N. J. L.* 467; 20 *C. J.* 1159. In such *mandamus* proceedings the question whether any such lands or properties have been taken, destroyed or damaged for public use within the intendment of the constitution and statutes, and distinguished from mere negligence in the course of construction, can be settled by a jury on a proper issue framed. *Haycock* v. *Jannarone, supra; Finger* v. *Doane,* 98 *N. J. L.* 635.

It may be noticed, although not involved here under the pleading *sub judice,* that in *Goodavage* v. *State Highway Commission, supra,* it was held, that although the defendant, State Highway Commission, had taken possession of the complainant's property without endeavoring to agree with him as to just compensation therefor, which was a statutory condition precedent to the right of entry and occupancy, nevertheless, the complainant's remedy was by *mandamus,* to require defendant to take proper proceedings to condemn, and not by injunction.

It follows from what has been said that The Port of New York Authority cannot be sued in this court for the alleged causes of action set forth in the complaint, for the reason hereinbefore stated, and its motion to set aside the service of the summons and complaint as to it is, therefore, granted, and a form of order may be submitted in accordance with the conclusion thus reached.