STATE OF NEW JERSEY, BY THE STATE HIGHWAY COM-
MISSIONER, PLAINTIFF-RESPONDENT, v. MAAS &
WALDSTEIN CO., A CORPORATION OF NEW JERSEY,
DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 16, 1964—Decided April 3, 1964.

212

Before Judges GOLDMANN, KILKENNY and COLLESTER.

*Mr. Herbert J. Hannoch* argued the cause for appellant (*Messrs. Hannoch, Weisman, Myers, Stern & Besser,* attorneys; *Mr. Hannoch* and *Mr. Barry C. Waldorf* on the brief).

*Mr. William J. McCormack,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General, attorney).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. This condemnation matter comes before the court on appeal of defendant Maas & Waldstein Co. from a Law Division order dissolving an *ad interim* restraint and striking so much of defendant's answer and separate defenses as did not admit matters alleged in the complaint.

Defendant sought a restraint pending final determination of this appeal. The State has agreed to hold the condemnation proceedings *in statu quo* pending our determination of the appeal.

Plaintiff instituted a condemnation proceeding to acquire a fee simple absolute interest in a portion of defendant's lands in Newark, N. J., fronting on the west bank of the Passaic River, a navigable stream, for highway purposes—more particularly, for the construction of a portion of Section 5 of

Route 21 Freeway. *N. J. S. A.* 27:7–22.2 empowers the State Highway Commissioner to acquire such an interest.

In June 1956 plaintiff had a study made of the feasibility of a state highway route along and in close proximity to the westerly bank of the Passaic River, from Belleville in Essex County to Clifton in Passaic County. Plaintiff subsequently approved this project as State Highway Route 21 Freeway. It has been open and in use for over three years. Use of the new highway was so great that the heavy traffic created a bottleneck on McCarter Highway (also known as State Highway Route 21) running from Newark to the Belleville terminus of the Freeway. In time plaintiff ordered an engineering study made for the Belleville-Newark extension, and at the end of December 1961 approved a general property map for the acquisition of properties required for the right-of-way, running 1.225 miles from Riverside Avenue in Newark to William Street in Belleville.

The freeway, as it passes by and across defendant's property, is to be constructed in part on defendant's lands, together with the riparian rights it owns along part of its river front, and as to these the Commissioner does not dispute title and ownership. As to other parts which the freeway will traverse, the Commissioner does dispute title and ownership. This dispute is the subject of a separate action which defendant has instituted against the Commissioner, *Maas & Waldstein Co. v. Palmer, Docket* L-13821-62 P. W., already pretried. Part of the freeway will be constructed on elevated piers and abutments in the Passaic River, immediately in front of defendant's lands.

Plaintiff notified defendant on October 31, 1962 that condemnation of its property had been authorized. On January 16, 1963 defendant was served with a copy of the complaint and an order to show cause, dated January 8, seeking the appointment of condemnation commissioners. The order was adjourned without date, as was plaintiff's notice of motion for immediate possession, as demanded in the complaint.

Defendant filed its answer on February 28, 1963, denying plaintiff's authority to acquire its lands for the purpose indicated. The first two defenses, relating to accuracy of the description of the lands to be taken, have been abandoned. The core of defendant's contention is reflected in its third separate defense:

"Title to defendant's lands extends to and fronts upon the Passaic River, a navigable water highway in the State of New Jersey. By virtue thereof, defendant owns, is in possession of, is entitled to and enjoys valuable privileges, rights and access to, in and arising from said water highway, including, without limitation, *inter alia* use of said river for life and property fire protection by means of municipally operated fire boats and withdrawal of water, and docking rights. These lands, privileges, rights and access, in whole and in part, have been possessed and occupied by defendant and its immediate predecessors in title, as private property under claim of ownership for a long period of time, to wit: more than sixty years, without any right being asserted therein by the State of New Jersey. The proposed taking by plaintiff is not in aid of navigation, but solely for state highway purposes. Plaintiff is without statutory or other power to acquire through condemnation or otherwise, defendant's said lands, rights, privileges and access in said navigable water highway, and deny defendant access thereto and use thereof."

An amended complaint did nothing more than give a more specific description of the land. Defendant's answer was a repetition of its original pleading.

After advertising for bids, the Commissioner on July 11, 1963 awarded to and thereafter entered into a contract with Public Constructors, Inc., for the construction of the Route 21 Freeway lying between Riverside Avenue in Newark and William Street in Belleville, N. J. Defendant had almost a month's notice that bids would be received on July 11. Public Constructors has entered upon the performance of its contract, but has been obliged to work around defendant's property because of the pending litigation.

Upon the return day of the order to show cause, the Law Division judge, acting pursuant to *Bergen County v. Hackensack,* 39 *N. J.* 377 (1963), fixed a short day for a hearing

on defendant's petition for a restraint *pendente lite*. Plaintiff moved to strike defendant's answer. We do not have a record of the hearing, but the facts established at that time apparently are not in dispute: defendant held fee title to its lands, together with riparian grants over certain portions thereof; it had been in peaceable possession of some of its lands since 1890, to some since 1926, and to a small strip at the northerly end of its property since 1942. Defendant contended, and it was not denied, that the proposed highway was to be built partially on its lands and partially over and into the Passaic River. Because the proposed highway was not in aid of navigation, defendant contended that federal consent must first be obtained. It also contended that plaintiff was without statutory or other power, by way of condemnation or otherwise, to acquire its lands, rights, privileges and access to the navigable water highway, and could not deny defendant access thereto and the use thereof.

The court overruled defendant's contentions, vacated the restraint it had granted, and struck so much of its answer and separate defenses as did not admit the matters alleged in the complaint. This appeal resulted.

Plaintiff does not question defendant's right to seek injunctive relief. The latter's petition is directly related to the allegations of the complaint seeking title to and possession of the property in question. *Cf. In re Monongahela Rye Liquors,* 141 *F.* 2d 864 (3 *Cir.* 1944). In such circumstances, the defense of sovereign immunity would not be available to plaintiff. Indeed, the doctrine of sovereign immunity is currently in disfavor. See *McCabe v. N. J. Turnpike Authority,* 35 *N. J.* 26, 31 *et seq.* (1961); *Cloyes v. Delaware Tp.,* 23 *N. J.* 324, 327 (1957), affirming 41 *N. J. Super.* 27 (1956); *Taylor v. N. J. Highway Authority,* 22 *N. J.* 454, 470 (1956).

Defendant argues that since the proposed taking by the State Highway Commissioner is not in aid of navigation, but solely for highway purposes, plaintiff is without

statutory power to condemn interests in a navigable highway controlled by the United States of America. It first asserts that the power to condemn must be strictly construed. It then contends that there is nothing in the statutes authorizing the Commissioner to acquire an interest in a navigable waterway. There can be no question as to the first proposition. *N. J. Zinc & Iron Co. v. Morris Canal and Banking Co.*, 44 *N. J. Eq.* 398, 404 (*Ch.* 1888), affirmed o. b., 47 *N. J. Eq.* 598 (*E. & A.* 1890); *N. J. Turnpike Authority v. Parsons*, 3 *N. J.* 235, 249 (1949). *Hester v. Miller*, 11 *N. J. Super.* 264, 270 (*Law Div.* 1951), affirmed and appeal dismissed 8 *N. J.* 81 (1951).

As for defendant's claim that the Commissioner lacked statutory authority to acquire an interest in a navigable stream, we start with the basic proposition that the State Highway Commissioner is the *alter ego* of the State. *Strobel Steel Construction Co. v. State Highway Comm'n*, 120 *N. J. L.* 298, 300 (*E. & A.* 1938), quoting with approval *Curtis & Hill Gravel & Sand Co. v. State Highway Comm'n*, 91 *N. J. Eq.* 421, 430–31 (*Ch.* 1920). And see *N. J. S. A.* 27:1–1. *R. S.* 27:7–22 gives the Commissioner broad powers of condemnation:

"The commissioner may acquire lands or rights therein by * * * condemnation in the manner provided in chapter 1 of the title Eminent Domain (§ 20:1–1 *et seq.*), and enter upon and take property in advance of making compensation therefor where for any reason he cannot acquire the property by agreement with the owner.
* * * * * * * *"

And *R. S.* 27:7–21(g) provides that the Commissioner may "do whatever may be necessary or desirable to effectuate the purpose of this title [*Title 27, Highways*]." The Highway Act should be liberally construed to reflect its purpose, the building of state highways. *Taylor-White Extracting Co. v. State Highway Comm'n*, 5 *N. J. Misc.* 255, 136 *A.* 183 (*Sup. Ct.* 1927), affirmed o. b. 105 *N. J. L.* 498 (*E. & A.* 1929). The act does not spell out the nature of the specific

kinds of property which the State Highway Commissioner may condemn. Certainly, it cannot be said that it was ever intended that the State could not condemn homes, business and industrial properties, farms and orchards, quarries and mines, and other kinds of property for highway construction, absent an explicit legislative description thereof. The Legislature must be taken as having intentionally used the general language it did, and this in aid of one of the primary functions of state government—the construction, maintenance and operation of highways, bridges and tunnels. See *Muszynski v. N. J. Turnpike Authority,* 27 *N. J. Super.* 248, 251 (*App. Div.* 1953), quoting *Miller v. Port of New York Authority,* 18 *N. J. Misc.* 601, 603, 15 *A.* 2*d* 262 (*Sup. Ct.* 1939).

In support of its argument that the Commissioner lacks statutory authority to condemn the lands in question, defendant cites certain legislative acts giving various powers to plaintiff: *N. J. S. A.* 27:7–22.3 (to acquire rights of access to traffic circles, grade separations and channelized intersections, and to ramp devices); *N. J. S. A.* 27:5B–1 (under contract with any Authority in the State Highway Department, to undertake and perform any acts in connection with the acquisition, construction, etc., of any project of such Authority, at the sole expense of the Authority); *N. J. S. A.* 27:7A–2 (to arrange with landowners, at the time of the purchase of rights-of-way for a freeway or parkway, for acquiring access rights and to eliminate existing direct access rights); *N. J. S. A.* 27:7A–4.1 (in connection with any freeway or parkway, to acquire, under certain conditions, an entire lot, block or tract of land, even though all of it is not needed for the right-of-way proper); *N. J. S. A.* 27:7A–5 (to acquire such property rights, easements and access rights as may be necessary to make an existing highway a freeway or parkway); *R. S.* 27:7–37 (to acquire lands outside the uniform width of the highway in order to conform as nearly as may be to a comprehensive municipal plan of improvement). Some of these may arguably be said to have been unnecessary. However, assuming that they were necessary, it should be

pointed out that none deals with the types of land actually needed for the construction of a highway, as distinguished from property rights in relation to or in connection with highway construction or improvement. Defendant's citation of *N. J. S. A.* 27:7–23 is inappropriate. It gives no new power, but merely describes the procedure to be followed when plaintiff finds it necessary to acquire municipally-owned property.

■ Defendant also refers us to the New Jersey Highway Authority Act (*L.* 1952, *c.* 16; *N. J. S. A.* 27:12B–1 *et seq.*), the Cape May-Lewes Ferry Act (*L.* 1953, *c.* 164; *N. J. S. A.* 27:12B–27 *et seq.*), and the New Jersey Expressway Authority Act (*L.* 1962, *c.* 10; *N. J. S. A.* 27:12C–3(1)). These acts deal with agencies created by the State, and placed in the State Highway Department for the purpose of carrying out a particular project. Unlike the State Highway Department, they are not the *alter ego* of the State; in the eyes of the law, they are independent entities. *N. J. Turnpike Authority v. Parsons,* above, 3 *N. J.,* at *page* 243. This being so, the Legislature had to make clear that they possessed the power of condemnation of particular rights, including lands under water and riparian rights.

*Hester v. Miller,* above, 11 *N. J. Super.* 264, upon which defendant relies, is distinguishable. The State Highway Commissioner there sought to condemn lands, not for the construction of a highway, but for nursery purposes and possibly the erection of additional service buildings. The instant condemnation is unquestionably for highway purposes. Similarly, *Frelinghuysen v. State Highway Comm'n,* 107 *N. J. L.* 218 (*Sup. Ct.* 1930), affirmed *per curiam* 108 *N. J. L.* 403 (*E. & A.* 1932); *Holcombe v. Western Union Tel. Co.,* 109 *N. J. L.* 551 (*E. & A.* 1932), and *Wolf v. State Highway Comm'n,* 110 *N. J. L.* 237 (*E. & A.* 1933), cited by defendant, are not pertinent. Those cases held that the State Highway Commission, to which the Commissioner is the successor, had no power to acquire a fee simple interest in lands, but only an easement. Power to acquire such fee was subsequently granted by *L.* 1951, *c.* 112, *N. J. S. A.* 27:7–22.2.

■■ It is settled in this State that the title of a riparian owner extends only to the high water mark, except in such cases as he has received a riparian grant from the State. Ownership of the land below the high water mark is vested in the State and is held under the guardianship of the Legislature, which is possessed of the same absolute power as Parliament enjoyed under the common law, to regulate, abridge or vacate public rights in navigable rivers, except in the field reserved to Congress by the Federal Constitution. The condemnation of the State is subject only to the paramount power of Congress to control the navigation of such waters to the extent necessary for the regulation of foreign and interstate commerce. *Ross v. Mayor, etc., of Edgewater,* 115 *N. J. L.* 477, 483–4 (*Sup. Ct.* 1935), affirmed *per curiam* 116 *N. J. L.* 447 (*E. & A.* 1936), *certiorari* denied 299 *U. S.* 543, 57 *S. Ct.* 37, 81 *L. Ed.* 400 (1936); *Schultz v. Wilson,* 44 *N. J. Super.* 591, 596 *et seq.* (*App. Div.* 1957), certification denied 24 *N. J.* 546 (1957); *Stevens v. Paterson and Newark R. R. Co.,* 34 *N. J. L.* 532, 549 *et seq.* (*E. & A.* 1870); *Bailey v. Driscoll,* 19 *N. J.* 363, 367 *et seq.* (1955), reversing 34 *N. J. Super.* 228 (*App. Div.* 1955).

■ The State may condemn defendant's uplands. It may also condemn such riparian rights as defendant may have in the Passaic River in front of its property. We hold, further, that plaintiff may also acquire whatever lands it may need for the freeway, lying underneath the waters of the Passaic River and which are not subject to a riparian grant held by defendant. Compare the *Stevens* case, above, where the Legislature granted the railroad that part of the public property which lay in front of the Stevens lands below the high water mark of the Passaic River. As plaintiff observed, the State as sovereign must enjoy, at the very least, a comparable power to condemn similar property for highway purposes.

In *Empire Trust Co. v. Board of Commerce and Navigation,* 124 *N. J. L.* 406 (*Sup. Ct.* 1940), the Board of Commerce and Navigation, with the approval of the Governor, granted the State Highway Commission a strip of land under-

neath the tidewaters of Newark Bay, a navigable body of water, for the construction of a public highway. Although the case was determined on the point that a declaratory judgment action would not lie against the State, Justice Heber held (at *page* 409) that there seemed to be no doubt of the authority of the State to do what had been done there and to carry out such construction, citing the *Stevens* and *Ross* cases, above, among others.

Having held that plaintiff may condemn the lands in question, both those to which defendant has riparian rights and those where it possesses no such rights, the only question remaining is the paramount power of the Federal Government with regard to the control of navigation in the river.

Following the Law Division hearing defendant learned that the State Highway Commissioner had, in January 1962 and before these condemnation proceedings were instituted, applied for the federal consent it had argued was necessary, and that such consent had been procured on May 8, 1963. Accordingly, when defendant filed its brief on appeal, it conceded that the federal consent phase of its argument had become moot. Having since examined a copy of the federal consent, defendant, at oral argument, stated that it was withdrawing its concession. It claims that the federal consent related only to "Proposed Alteration to, and Proposed Underpass for The Erie-Lackawanna R. R. Bridge (Greenwood Lake Branch) in Passaic River." This language appears as a legend on sheet 5 of eight sheets of maps accompanying the federal consent. However, the consent is not to be so narrowly construed. The permit issued by the Department of the Army, which states that it "merely expresses the assent of the Federal Government so far as concerns the public rights of navigation," reads that pursuant to section 10 of the Act of Congress, approved March 3, 1899, the State Highway Department was authorized

"* * * to construct riprap revetments, steel sheet pile bulkheads and reenforced concrete retaining walls, to place fill shoreward thereof, to dredge to four (4) feet below mean low water, and to construct a

railroad bridge pier; in Passaic River at Newark and Belleville, Essex County, N. J., in accordance with the plans shown on the drawings attached * * *."

These drawings clearly show that the federal consent extended beyond the very limited area of the railroad bridge to which defendant refers.

We hold that plaintiff has obtained the federal consent required for the construction of the freeway, so that it may proceed to build in and over the river as proposed in its plans.

Passing reference should be made to that part of the third separate defense which suggests that defendant relies upon a claim of ownership of lands, privileges, rights and access, in whole and in part, for more than 60 years, without any right being asserted therein by the State. This sounds in adverse possession. Adverse possession does not run against the State; there can be no title by prescription against the public. *Quinlan v. Fair Haven,* 102 *N. J. L.* 443, 446 (*E. & A.* 1925), citing *Hoboken Land & Improvement Co. v. Mayor, etc., of Hoboken,* 36 *N. J. L.* 540 (*E. & A.* 1873).

In light of the views herein expressed, it is unnecessary to deal with plaintiff's claim that defendant is not entitled to the injunctive relief sought because it has not been diligent in pursuing its rights.

Affirmed.