THE STATE OF NEW JERSEY, PLAINTIFF, v. FRANCIS MURPHY, *ET AL.*, DEFENDANTS.

IN THE MATTER OF THE APPLICATION TO QUASH SUBPOENA TO WATERFRONT COMMISSION OF NEW YORK HARBOR.

WATERFRONT COMMISSION OF NEW YORK HARBOR, APPELLANT, AND FRANCIS MURPHY, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued September 25, 1961—Decided November 20, 1961.

*Mr. Robert A. Pin* argued the cause for appellant Waterfront Commission of New York Harbor (*Mr. William P. Sirignano* and *Mr. Irving Malchman,* of the New York Bar, on the brief).

*Mr. Harold Krieger* argued the cause for defendant McNamara (*Messrs. Krieger & Chodash,* attorneys).

*Mr. James A. Hession* argued the cause for defendant Stevens (*Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J.   The trial court ordered pretrial discovery of statements which defendants McNamara and Stevens gave the Waterfront Commission of New York Harbor (herein Commission). *State v. Murphy,* 63 *N. J. Super.* 188 (*Cty. Ct.* 1960). The order deals as well with notes or memoranda of examinations of defendants, but since no such papers exist, we are concerned only with the stenographic transcript of their testimony before the agency.

The statements, made in the course of an investigation conducted by the Commission, were part of the material the Commission sent to the Attorney General, thus informing him of an alleged crime and resulting ultimately in the indictment in this matter. The indictment charges a conspiracy among Francis Murphy, McNamara, Stevens and others, to cheat and defraud American Export Lines, Inc. In essence it is alleged that Murphy, business agent of Local 1 of the International Longshoremen's Association, had eight longshoremen and a checker work upon alterations and improvements of a house he owned; that these men were recorded on the payroll records of American Export Lines, Inc., as working on the days they in fact

worked on the Murphy house, and were paid by the company; that McNamara, the hiring agent employed by the company and licensed by the Commission, and Stevens, the general superintendent of the company, were parties to the conspiracy thus to defraud the company.

In their respective motions McNamara and Stevens asked for inspection of "written statements made by said defendant which will be offered at the trial." The Commission was not a party to the motions, and when it learned of them, it expressed its opposition to the deputy attorney general who handled the matter for the county prosecutor. The Commission's position will be stated hereinafter. Thereupon the deputy attorney general stipulated the State would not use or in any way refer to the statements at the trial of the indictment. The trial court rejected the stipulation, saying (63 *N. J. Super.*, at *p.* 195):

"* * * The prosecutor represents the community and society. It is his duty to present and use all evidence within his knowledge and possession in order to vigorously present a case against a defendant. It is not for him to decide that evidence previously given by a defendant is not to be used at a trial in which the same defendant is accused of a crime."

The transcripts having been returned to the Commission, the trial court on its own initiative directed a subpoena *duces tecum* to issue commanding the secretary of the Commission to produce them. The Commission countered with a motion to quash the subpoena. The motion was denied, and the Commission appealed. We certified the matter before the Appellate Division acted upon it.

I. .

■ We think the trial court erred in issuing the subpoena on its own motion. The application of each defendant was limited to such statement of his own as "will be offered at the trial." When the State stipulated it would not offer or use the statements, there disappeared the premise upon

which the motions depended. It then rested with defendants to decide whether they needed pretrial inspection for other reasons, and if so, to make another application to which the parties in interest could then address their views.

As noted above, the trial court did not find defendants needed inspection for some purpose other than to meet the use of the statements against them, but rather held the State could not bind itself not to use the statements, and hence the premise of defendants' motions subsisted.

We cannot accept the trial court's view of the prosecutor's authority. It is true that a criminal charge will not be dismissed upon the prosecutor's motion without the court's approval, *R. R.* 3:11-3(a), and it may well be that if a stipulation not to use certain evidence would lead to a motion to dismiss, the court's power of superintendence could be invoked. And it may be granted a court may itself summon a material witness where neither side will call him. See *State v. Butler,* 27 *N. J.* 560, 601 (1958); *Band's Refuse Removal, Inc. v. Borough of Fair Lawn,* 62 *N. J. Super.* 522, 548 (*App. Div.* 1960), certification denied 33 *N. J.* 387 (1960). But nonetheless the prosecutor, as the State's representative, has wide discretion with respect to the production of proof, a discretion which, it seems to us, the trial court denied in absolute terms.

A prosecutor may sensibly decide for various reasons not to use evidence which could advance the State's case. For example, a confession or other proof which the State does not need may raise distracting issues or unduly extend the trial or invite claims of prejudice; or the offer may disclose material which can harm the State in another matter; or the identity of an informer may needlessly be revealed. We have suggested enough to demonstrate the need for discretion in the prosecutor. He does not have a peremptory duty to use all available evidence to support the charge. And surely, if a court should undertake to review the prosecutor's decision in such matters, it must know the reasons for his decision and weigh them against the contribution

the evidence could make in the case. As the record stands, there was no basis to question the State's decision.

## II.

For the reasons given the order under review ought to be reversed and defendants remitted to another application. But in the course of the proceedings, the applications of defendants were reshaped and the parties received full opportunity to be heard upon them; and since the trial of this indictment has been much delayed by this preliminary quarrel, we will consider the issue as now presented, so that the trial will not be further postponed.

## A.

*R. R.* 3:5-11 deals with discovery and inspection and reads:

"Upon motion of a defendant made at any time after the filing of the indictment or accusation, the court shall order the prosecutor to permit the defendant to inspect and copy or photograph designated books, tangible objects, papers or documents other than written statements or confessions made by the defendant obtained from or belonging to the defendant and may, if the interests of justice so require, order the prosecutor to permit the defendant to inspect and copy or photograph written statements or confessions made by the defendant and designated books, tangible objects, papers or documents obtained from others except written statements or confessions."

The subpoena was issued under *R. R.* 3:5-10(c) which reads:

"A subpoena may also command the person to whom it is directed to produce books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or other objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence, and may upon their production permit the books, papers, documents, or objects or portions thereof, to be inspected and copied by the parties and their attorneys."

We must first consider the connection between the subpoena rule and a defendant's right to pretrial inspection. We obtained our subpoena rule from Rule 17(c) of the *Federal Rules of Criminal Procedure*. The question whether Rule 17(c) relates to pretrial discovery was considered in *Bowman Dairy Co. v. United States,* 341 *U. S.* 214, 71 *S. Ct.* 675, 95 *L. Ed.* 879 (1951). See also *United States v. O'Connor,* 237 *F. 2d* 466 (2 *Cir.* 1956). There is disagreement upon the precise meaning of *Bowman.* One view is that it holds Rule 17(c) does not enlarge the right to discovery prescribed by Federal Rule 16, and provides merely for inspection of evidentiary material the applying party may offer, such inspection thus serving only to expedite the trial itself. Some courts, however, appear to find authority in *Bowman* for pretrial inspection as such. See Orfield, "Discovery and Inspection in Federal Criminal Procedure," 59 *W. Va. L. Rev.* 312, 329 (1957).

Federal Rule 17(c) appeared in the *Tentative Draft of Rules* (1948) as *Rule* 2:5–8(c) with the comment (*p.* 52) that the rule accords "with the present practice in New Jersey except that it specifically outlines the procedure for the parties to examine documents before the trial in order that they may be in a better position to prepare the case and not waste the court's time." The statement just quoted is not precisely revealing with respect to the immediate question. In both *State v. Cicenia,* 6 *N. J.* 296, 300 (1951), *certiorari* denied 350 *U. S.* 925, 76 *S. Ct.* 215, 100 *L. Ed.* 809 (1955), and *State v. Tune,* 13 *N. J.* 203, 212, 222 (1953), a subpoena under that rule was accepted as an appropriate vehicle for discovery but neither case found the rule defined the basis for entitlement. Thus the rule leaves unaffected the pre-existing inherent power of the court to decide the meritorious question as the interests of justice may require. It was while *Tune* was pending that *R. R.* 3:5–11 was proposed (13 *N. J.*, at *p.* 225). That rule drew upon both Federal Rule 16 and Rule 28 of the *Uniform Rules of Criminal Procedure.* It defined

entitlement to discovery in absolute terms in part, leaving the remainder of the problem for solution in accordance with the pre-existing standard, "if the interests of justice so require."

We are satisfied that the subpoena rule does not provide a touchstone for decision of a contested application for discovery. Rather it simply authorizes a procedural device to bring the subject matter before a court. To resolve a dispute which may arise, the court should look to the policy reflected in *R. R.* 3:5–11 and to case law insofar as the discovery rule itself may not provide the answer.

■ We should add that *R. R.* 3:5–11 does not foreclose discovery against third persons. It is limited in terms to what the prosecutor possesses, doubtless because the rule was devised to deal with discovery between parties to the litigation. The inherent power of the court may be exerted as to non-parties, and, as we have said, a subpoena under *R. R.* 3:5–10(c) is a suitable mechanism to bring the subject before the court. See *State v. Bunk,* 63 *A.* 2d 842, 846 (*N. J. Cty. Ct.* 1949); *United States v. Berman,* 24 *F. R. D.* 26 (*S. D. N. Y.* 1959); *United States v. Shindler,* 24 *F. R. D.* 142 (*S. D. N. Y.* 1959).

■ In determining whether inspection should be ordered, we must consider both the interests of the State as a party to the prosecution and the interests of the Commission.

### B.

We will first consider the application from the point of view of the State.

*R. R.* 3:5–11 provides the court "shall" order inspection of everything obtained from or belonging to the defendant other than his "written statements or confession." As to such statements, the rule provides the court "may, if the interests of justice so require," so order.

In *State v. Johnson,* 28 *N. J.* 133 (1958), we fully explored the question of pretrial inspection by a defendant of his own statement and held that it should be ordered

upon his showing that he cannot recall the statement with sufficient detail to satisfy his counsel that he can fairly go to trial without it, unless the State shows inspection would improperly hamper the prosecution (*p.* 141). *Johnson* involved a statement the prosecution intended to use. Here, by virtue of the State's stipulation, the issue assumes another hue. Defendants say they nonetheless need the statements to refresh their memories to aid them in preparation of their defense, and it was further suggested at argument that since events at the trial might entitle defendants to prove prior consistent statements, they need inspection to prepare for that possibility.

*R. R.* 3:5–11 is not limited to evidence the State intends to use. Rather it contemplates pretrial inspection as a matter of right of everything taken from a defendant (other than his statement) without reference to the use the State may intend to make of such material. The rule thus recognizes a defendant may have pretrial inspection for the purpose of preparing his own case. Similarly, the power to order inspection of a defendant's statement or of materials obtained from others is not conditioned upon the plans of the prosecution.

We should note that both Federal Rule 16 and Uniform Rule 28 provide for "a showing that the items sought may be material to the preparation of his defense." Our failure to adopt that phrase does not mean that we intended discovery to be limited to a preview of what the State will offer at the trial. We merely adopted another test without thereby modifying the purposes to be furthered by discovery. Specifically, we provided for an absolute right to discovery of everything (other than his statement) taken from a defendant, and, as to all else, we provided for a decision upon the basis of the requirements of justice, a concept which is pervasive and includes the needs of an accused to prepare for the presentation of his defense. See *State v. Winne,* 27 *N. J. Super.* 120, 123 (*Law Div.* 1953), affirmed 27 *N. J. Super.* 304, 309 (*App. Div.* 1953).

■ Hence it is not a bar to inspection that the statement will not be used by the State. On the contrary, if the State does not intend to use the statement, it cannot argue that disclosure will prejudice it upon the trial of the indictment. By this we mean that the State cannot even advance the contention we rejected in *Johnson,* that inspection might enable a defendant to fabricate an escape from some crushing evidence of guilt contained in his statement. We are satisfied defendants' showing warrants inspection and that such inspection cannot hamper the State in its prosecution of the charge.

Accordingly inspection should be ordered unless some consideration advanced by the Commission tips the scales the other way. Indeed the State did not appeal. It is the Commission alone which challenges the inspection. We accordingly turn to the objections it presses.

## C.

The Commission claims disclosure will prejudice it in its own proceedings for the revocation of defendant McNamara's license as a hiring agent. It appears that McNamara unsuccessfully sought pretrial inspection in connection with those proceedings before both the Commission and the Supreme Court of New York. It appears also that the Commission granted McNamara a stay of the revocation proceedings until the conclusion of the criminal trial. Thus if inspection should here be ordered, McNamara will receive a prehearing inspection which he was unable to obtain with respect to the agency proceeding.

■ The Commission's claim of prejudice is weak in two respects. First, the Commission informs us that it permits witnesses to be accompanied by counsel, and in fact counsel for McNamara and Stevens attended the examination of their clients. In such examinations counsel are free to take notes. Thus the Commission's position would make the predicament of a witness, if later charged, depend upon his

attorney's capacity for speedy and accurate recording. Second, although the statements were not presented to the grand jury, it is not suggested they were sent to the Attorney General with any restriction upon their use. Since the Commission voluntarily postponed its own hearing, the disclosure could readily have occurred at the criminal trial in advance of the Commission's own hearing. It seems to us that when the Commission postponed its own hearing, it must have decided the public interest would be better served by the trial of the criminal charge even though the statements would thereby be revealed prior to its own hearing. On the merits, we are satisfied inspection should be ordered.

The Commission, however, challenges the court's authority to order inspection. Some preliminary observations will place the legal issues in perspective.

As we have already said, the fact that the discovery rule speaks of orders upon the prosecutor does not mean that discovery may be defeated because the prosecutor does not possess the document or the authority to order its production. It may well be that the statement of one later accused will have been taken by some other of the many officers and agencies of the State concerned with the enforcement or the administration of the laws. So, for example, it may have been taken by a local police officer or a member of the Attorney General's staff; or in a proceeding before a professional board or some other agency in the executive department. The right of an accused to pretrial inspection can hardly depend upon the identity of the agency of the State which obtained the statement relating to the crime charged in the indictment. In short, although the State may, as it necessarily must, diffuse its total power among many offices and agencies, yet when the State brings its authority to bear upon one accused of crime, all of its agents must respond to satisfy the State's obligation to the accused.

The question is whether the Commission is an agency of the State within the view just stated. The Commission says it "enjoys a sovereign immunity from suit." The compact expressly provides the Commission may "sue and be sued," *N. J. S. A.* 32:23–10(1). The Commission argues that a "subpoena" is not a "suit" within the meaning of that phrase. We cannot agree. A proceeding against a third party for the production of documents, whether the proceeding originate by subpoena or some more plenary process, becomes a "suit" in every real sense when the third party disputes the right asserted.

The Commission contends further that even if it is thus subject procedurally to the institution of this "suit," nonetheless it has a substantive immunity which bars the entry of an effective order against it. This contention seems to rest upon a misconception of the agency's relation to the contracting states.

The Commission was created by the States of New York and New Jersey to deal with sundry evils of the waterfront of the New York harbor. The compact received the consent of Congress under *Article* I, section 9 of the *United States Constitution*. Act of August 12, 1953, *c.* 407, 67 *Stat.* 541. Such consent of course did not make the Commission an agency of the federal government or the recipient of its constitutional powers. *Leach and Sugg, The Administration of Interstate Compacts* 22 (1959); cf. *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 *U. S.* 92, 109, 58 *S. Ct.* 803, 82 *L. Ed.* 1202, 1212 (1938). The Federal Constitution requires the consent of Congress in order to guard against injury to the national interests or to non-party states. *Petty v. Tennessee-Missouri Bridge Comm'n*, 359 *U. S.* 275, 288–289, 79 *S. Ct.* 785, 3 *L. Ed. 2d* 804, 814 (1959) (Frankfurter, J., dissenting). As the compact expressly states, the Commission is "a body corporate and politic, an instrumentality of the States of New York and New Jersey." *N. J. S. A.* 32:23–7. The Commission is the agent of each state and of both of them,

see *Helvering v. Gerhardt,* 304 *U. S.* 405, 58 *S. Ct.* 969, 82 *L. Ed.* 1427 (1938), and exercises a portion of the police power delegated by the states which created it, *Hazelton v. Murray,* 21 *N. J.* 115, 119 (1956), and cases there cited.

The Commission is not a separate level of government somewhere between the federal government and the contracting states. It is part of the government of each of the states. Each Governor appoints a commissioner with the advice and consent of the State Senate and fixes his salary. *N. J. S. A.* 32:23–8. The Commission's annual budget must be submitted to the Governors and either one may disapprove or reduce any item. *N. J. S. A.* 32:23–57. The Commission must report annually to the Governor and Legislature of each state. *N. J. S. A.* 32:23–10(13). The same section (item 14) requires the Commission "To co-operate with * * * any department, division, bureau, board, commission, or agency of either or both States, or of any county or municipality thereof." It was pursuant to this provision that the Commission transmitted to the Attorney General the evidence of the alleged crime it here uncovered in its investigations. If a witness subpoenaed by the Commission fails to comply, it is the courts of each state which punish for contempt. *N. J. S. A.* 32:23–62; *In re Application of Waterfront Comm'n,* 32 *N. J.* 323 (1960). The actions of the Commission are reviewable in the state courts. *N. J. S. A.* 32:23–51.

In short the states did not create a governmental authority and cut the umbilical cord, if indeed constitutionally they could. As the agent of each state, the Commission is subject to all of its laws, whether of statutory or common law origin, except insofar as the states agreed expressly or by fair implication to place it beyond them. The question is not whether the Commission is endowed with an immunity the State could assert in actions against it. See *Petty v. Tennessee-Missouri Bridge Comm'n, supra,* 359 *U. S.* 275, 79 *S. Ct.* 785, 3 *L. Ed. 2d* 804; *Howell v. Port of New York Authority,* 34 *F. Supp.* 797 (*D. N. J.* 1940); *Miller v. Port of New York*

*Authority,* 18 *N. J. Misc.* 601, 15 *A. 2d* 262 (*Sup. Ct.* 1939). The question is whether the Commission is exempt from the obligation its principal owes to one prosecuted for crime. Nothing in the compact so provides; nor does the mission assigned to the Commission require that an exemption be implied.

■ The county prosecutor is charged with the prosecution of the criminal business of the State. *N. J. S.* 2A:158–4. If the Commission were correct in its position, it could in practical effect cause the termination of a criminal prosecution if the State should be ordered upon the penalty of dismissal to produce materials in the agency's possession. See *Jencks v. United States,* 353 *U. S.* 657, 672, 77 *S. Ct.* 1107, 1 *L. Ed. 2d* 1103, 1114 (1957). We cannot conceive that the Legislatures intended to vest the Commission with that power. This is not to say the Commission is subject to the order of the prosecutor or may not assert a position different from his if it believes it in the public interest to do so. The Commission, like other governmental entities, is *parens patriae* within the orbit of its own political responsibility, *Bergen County v. Port of New York Authority,* 32 *N. J.* 303, 311 (1960), and hence may speak for the public right entrusted to it. But it does not have the final voice, and it, like the prosecutor and any other agent of the State, is subject to the order of the court in connection with a criminal proceeding of the State.

*State ex rel. Dyer v. Sims,* 341 *U. S.* 22, 71 *S. Ct.* 557, 95 *L. Ed.* 713 (1951), does not deny the jurisdiction of the state courts to act. It holds only that if the contracting states dispute their respective obligations under a compact, the United States Supreme Court has the *final* say. It does not suggest the state courts lack jurisdiction of a controversy in which the meaning or effect of the compact is implicated. *Cf. Port of New York Authority v. Weehawken Tp.,* 14 *N. J.* 570 (1954).

Finally, the Commission relies upon a regulation it adopted pursuant to its general power to make rules and regulations

it deems necessary to effectuate the purposes of the compact, *N. J. S. A.* 32:23–10(7), which regulations, by definition of "compact," become part of it, *N. J. S. A.* 32:23–6. In essence the regulation declares information and documents obtained by its staff to be confidential, vests the authority to make disclosure in the commissioners, and directs its personnel, if subpoenaed, to decline respectfully on the basis of the regulation to discuss the information or to produce the documents.

We do not doubt the power of the Commission thus to protect confidential material as a matter of internal management. *United States ex rel. Touhy v. Ragen,* 340 *U. S.* 462, 71 *S. Ct.* 416, 95 *L. Ed.* 417 (1951). And we need not consider the effect of the regulation if some third party seeks access to its files for use in a law suit to which neither the Commission nor the State is a party litigant. *Boske v. Comingore,* 177 *U. S.* 459, 20 *S. Ct.* 701, 44 *L. Ed.* 846 (1900); *Appeal of S. E. C. and Timbers,* 226 *F. 2d* 501 (6 *Cir.* 1955). The narrow question is whether the Commission can by its own enactment relieve itself of the obligation to make disclosure in a criminal proceeding or immunize itself from a judicial order to enforce that obligation. We think it clear that the authority to adopt rules and regulations is not a bootstrap power by which the created can alter its relations with its creators.

Reference is made to federal decisions involving similar regulations adopted by department heads under the so-called "housekeeping" statute, 5 *U. S. C.* § 22. It is sufficient to say that it has yet to be held that the department head, rather than the judiciary, has the final decision with respect to disclosure. See *United States v. Reynolds,* 345 *U. S.* 1, 73 *S. Ct.* 528, 97 *L. Ed.* 727 (1953); *United States ex rel. Touhy v. Ragen, supra,* 340 *U. S.* 462, 71 *S. Ct.* 416, 95 *L. Ed.* 417; Carrow, "Governmental Nondisclosure in Judicial Proceedings," 107 *U. Pa. L. Rev.* 166, 191 (1958).

We are satisfied the result reached below should be affirmed for the reasons we have stated. Of course the acceptance

by defendants of their respective statements will release the State of its stipulation not to use them at the trial. The reason for the stipulation no longer subsisting, the stipulation falls. No costs.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.