BANCO CRÉDITO Y AHORRO PONCEÑO, Plaintiff and Appellee, *v.* ROSARIO CHICO SAGASTIBELZA, AMADO B. COLÓN, and MARÍA MAGDALENA ÁVILA, Defendants and Appellant the latter. MARÍA MAGDALENA ÁVILA, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, FEDERICO TILÉN, JUDGE, Respondent; BANCO CRÉDITO Y AHORRO PONCEÑO, Intervener.

Nos. 12829, 2815.      Decided February 24, 1964.

*Rafael Soltero Peralta* for petitioner and appellant. *Miguel Marcos Morales* for intervener and appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM: On August 3, 1946, José Ramón, Manuel and their sister Miguelina Oliver, the latter married to Arístides Santoni, sold a property in Arecibo (Oliver Building)

to Dr. Rafael Colón and wife, and to Rosario Chico Sagasti-belza for the stipulated amount of $75,000, of which the vendors declared having received, prior to the execution of the deed, the amount of $50,000—each vendee having paid $25,000—both vendees binding themselves to pay the remaining $25,000 within the term of five years.

On the same day and before the same notary, the vendee Rosario Chico executed a Deed of Power of Attorney in favor of her half-brother Amado Colón, married at the time to María Magdalena Ávila, granting him full powers in relation to the joint interest of one-half of the Oliver Building, said Power including the authority to sell, mortgage and barter. In said Power of Attorney one of the subscribing witnesses was Arístides Santoni.[1]

By deed No. 85 of August 13, 1951, before Notary Armindo Cadilla Ginorio, Amado Colón, as attorney-in-fact of Rosario Chico, constituted a first voluntary mortgage on the joint interest of one-half of the Oliver Building in favor of the holder or bearer of a mortgage note of $35,000, copied in the deed and issued by said debtor on the same date of said deed payable at sight and with interest at 6% annually until its full payment or reimbursement, extending the mortgage to an additional credit of $6,300 for interest and $2,000 for plaintiff attorney's fees in case of execution.[2]

Amado Colón delivered said mortgage note to Banco Crédito y Ahorro Ponceño, Arecibo Branch to secure his personal loan.[3]

---

[1] On said date (1946) Santoni was not an employee of Banco Crédito. It is in the year 1949 that he started to work in the Arecibo Branch of said Bank.

[2] Said deed was recorded in the Registry on September 28, 1951.

[3] There is conflict in the evidence as to the date of delivery of said note by Colón to the Bank; but that will be hereinafter discussed in detail. Said note was received personally, according to his own testimony, by Arístides Santoni, who on said date was already the manager of the Branch.

On July 9, 1956 María M. Ávila filed a petition for divorce and liquidation of the conjugal partnership against her husband, Amado Colón, which was amended on February 4, 1956,[4] alleging as a second cause for action, that her husband and his half-sister Rosario Chico conspired, so that the latter might appear as vendee of one-half of the Oliver Building, but in reality her husband was the actual vendee of said joint interest, and therefore, said joint interest belonged to the conjugal partnership composed of herself and her husband.

On September 5, 1956 Mrs. Ávila entered in the Registry of Property—marginal note on the Oliver Building—her petition for divorce against Amado Colón.

On August 25, 1958, Banco Crédito y Ahorro Ponceño, alleging being the holder, since August 15, 1951, of the aforesaid mortgage note to bearer filed an action of debt and foreclosure of the mortgage by ordinary proceeding against Rosario Chico, owner, according to the Registry, of a one-half joint interest of the Oliver Building, and against María M. Ávila, because it appears from the Registry that said lady had filed a *lis pendens* on said property in the divorce case filed by her against her husband.

Mrs. Ávila answered the previous complaint alleging that the actual owner of one-half of the Oliver Building was her husband, Amado Colón, and not Rosario Chico, and that the note to bearer of August 13, 1951 had been received by the Bank subsequent to the entry of *"lis pendens"* in the Registry, not on August 15, 1951 as alleged by the Bank in its complaint.

---

[4] On November 30, 1956 Mrs. Ávila filed a Second Amended Petition for Divorce in which she charged her husband with the commission of several frauds which prejudiced her rights. The important fact in this second amendment complaint is that John Doe and Richard Roe are included as codefendants and unknown holders of a mortgage note to the bearer with which the joint interest of the half of the Oliver Building is encumbered. But they made a mistake, and instead of stating that said note was executed on August 13, 1951, it is stated that it was executed *on August 13, 1946*.

The Bank then filed an amended complaint in which it joined Amado Colón as defendant, by reason of the allegation of fraud made by Mrs. Ávila in her answer to the original complaint of the Bank.

Defendants Rosario Chico and Amado Colón answered the bank's amended complaint, consenting to it, while Mrs. Ávila answered it making, more or less, the same allegations stated in her answer to the original complaint.

The theory of codefendant Mrs. Ávila in the lower court was to the effect that the mortgage foreclosure proceeding did not lie *because Banco Crédito was a holder in bad faith*, the foregoing being predicated on two grounds, namely: (1) that the actual owner of the one-half joint interest of the Oliver Building was her husband Amado Colón, and that he and Rosario Chico had conspired to prejudice her rights; that Arístides Santoni, Manager of Banco Crédito, Arecibo Branch, had personal knowledge of said fraud, and that Santoni being an agent of said bank, his knowledge was charged to his principal, Banco Crédito; and (2) that the bank became holder of the mortgage note to bearer subsequent to the date on which codefendant had entered her petition for divorce in the Registry. (Civil Case No. 56-3206.)

On its part the plaintiff Bank alleged that it was a third party in mortgage in good faith, since it had received said note to bearer prior to the date on which the *lis pendens* for divorce had been entered in the Registry and the Bank and its agents were not aware of the fraud alleged, in the event that it had been committed.

On June 24, 1960 the Superior Court, San Juan Part, rendered judgment sustaining the complaint for the collection of money and foreclosure of the mortgage by ordinary proceeding ordering that codefendants Colón and Rosario Chico severally owed Banco Crédito the amount of $34,100 of principal, plus 6% annual interest since October 31, 1957, plus $2,000 for attorney's fees agreed in the deed, plus costs.

The trial court held, in addition, that upon failure to comply with the judgment, the foreclosure of the mortgage secured by the mortgage note would be ordered.

The lower court held that Banco Crédito was a third party in good faith. As to the two principal contentions of codefendant Mrs. Ávila it decided: (1) that supposing Colón had committed fraud in relation to the Oliver Building, it could not be decided, on the basis of the evidence introduced, that Santoni had knowledge of said fraud; and (2) that in spite of certain contradictions in the evidence presented by the Bank as to the date on which they obtained the note to bearer, the Bank became holder of said document not later than February 4, 1953, and therefore, prior to the date of the entry in the Registry of the notice of divorce.

On October 5, 1960, codefendant Mrs. Ávila filed in the trial court a "Motion under Rule 49.2 of the Rules of Civil Procedure of 1958", requesting the court to relieve her from the judgment rendered by the court. The motion was grounded on the fact that new evidence was discovered which showed: (1) that the Bank was not the holder of the note prior to the date of the entry in the Registry of the notice of divorce and, (2) and supposing the Bank was the holder of the note since 1951, it had been a party in the petition for divorce, because John Doe and Richard Roe had been joined as codefendants and unknown holders of the note, and therefore the Bank was affected by a decision rendered by Judge Cancio on February 6, 1957 in said case of divorce, in which decision Mrs. Ávila alleges, Judge Cancio decided that the one-half joint interest of the Oliver Building belonged to Amado Colón and not to Rosario Chico.[5]

On November 23, 1960, after a hearing, the trial court rendered its decision dismissing said Motion under Rule 49.2. We issued a writ of certiorari to review said decision.

---

[5] We shall consider this point in discussing the appeal for certiorari.

In addition to the petition for certiorari Mrs. Ávila filed a "Notice of Appeal" on July 26, 1960 from the judgment rendered by the Superior Court on June 24, 1960 and filed with the record on June 28 of said year.

In the brief submitted by codefendant Mrs. Avila in support of her appeal, appellant alleges that the trial court committed twelve errors, which can be summarized, according to appellant herself, into the following four fundamental errors:

1. "In failing to acknowledge in its judgment the fraud of Amado B. Colón against his wife, María Magdalena Ávila, to dispossess her of all participation in the conjugal partnership and specifically, insofar as pertinent, in failing to acknowledge the fraud committed by Amado B. Colón in conspiring with his sister Rosario Chico to simulate a title in her favor of a property actually acquired by him, and consequently dispossessing his wife María Magdalena Ávila of her share in the conjugal partnership, that is, in the one-half joint interest in the Oliver Building in Arecibo."

2. "In refusing to acknowledge in the judgment that plaintiff Bank had notice of the fraud committed by Amado Colón against his wife in relation to the joint interest of the Oliver Building, and, consequently, refusing to acknowledge that the Bank was a purchaser in bad faith of the mortgage note to the bearer which it seeks to execute in this action against María Magdalena Ávila, because of the previous knowledge of the fraud in relation to the mortgage title as well as for having acquired the note subsequent to the notice of the fraud in the Registry."

3. "In sustaining the complaint of the Bank and ordering the foreclosure of a joint interest, which is the conjugal property of María Magdalena Ávila, which should not legally secure a mortgage credit fraudulently constituted, without her consent to establish the encumbrance."

4. In depriving codefendant María Magdalena Ávila of her right of ownership without the due process of law by refusing to admit essential evidence pertinent to a fraud to perpetuate a

dispossession and in refusing, likewise, to give said party a reasonable opportunity to prepare her defense for the trial."[6]

## Discussion of Errors Assigned in the Petition for Review

As to the question raised in the first three errors we must decide whether or not the Bank is a third party protected by Art. 34 of the Mortgage Law (30 L.P.R.A. § 59). Appellant maintains that the Bank is a holder in bad faith of the mortgage note because (a) the Bank, through its agent Santoni, had knowledge of the fraud supposedly committed by Colón and Rosario Chico, and (b) the Bank became holder of said note subsequent to the date on which appellant entered her notice of divorce in the Registry of Property against her husband Colón, in which she reported the fraud committed.

■ Although the supposed fraud does not appear from the Registry, we must decide whether the Bank had personal knowledge of said fraud, because if it did, it is not protected by the record of the Registry. *Mundo* v. *Fúster*, 87 P.R.R. 343 (1963).

First let us see whether the Bank obtained the mortgage note subsequent to the entry in the Registry of the notice for divorce which was recorded, as we have already said, on September 5, 1956. The trial court decided that even though the evidence was contradictory, it was not necessary to determine the exact date of the delivery because from the evidence it appeared that not later than February 4, 1953 the Bank already had said note in its possession. Said finding of fact is substantially supported by the evidence. Santoni and Goitía,

---

[6] Although the appeal does not raise a substantial constitutional question, *Soltero* v. *Sec. of the Treasury*, 86 P.R.R. 25 (1962); *Fuentes* v. *Sec. of the Treasury*, 85 P.R.R. 472 (1962); *Heirs of Elías Godreau* v. *Guerrero*, 296 F.2d 326 and *Ortiz* v. *Burgos*, 85 P.R.R. 39 (1962), we shall consider it as a petition for review in order to dispose of the questions raised on their merits. Judiciary Act § 14, subd. "F". *Soltero* v. *Sec. of the Treasury*, *supra*; and *Bermúdez* v. *Ortiz*, 80 P.R.R. 683 (1958).

Manager and Assistant-Manager respectively of the Banco Crédito y Ahorro Ponceño, Arecibo Branch, for the year 1951,[7] testified that the note was received by the Bank on August 15, 1951. Goitía furthermore testified that said note was under his control from 1951 to the date of the trial. On the other hand in the Registry of Collaterals of Banco Crédito y Ahorro, Arecibo Branch, there appears an entry by which it is understood that said Branch received said mortgage note to bearer on August 15, 1951. However, from the very Minutes of the Board of Directors of Banco Crédito[8] it appears that until March 20, 1952 Amado Colón owed the Bank a loan amounting to $25,000 signed solely by him without any security at all. (Plaintiff's Exh. 20.) From said minutes it further appears that Amado Colón requested an additional loan of $3,000 on January 29, 1953 offering as surety the mortgage note to the bearer. This loan was approved by the Board of Directors on February 4, 1953, which date the trial judge considered as the latest possible date on which the Bank became possessor of the mortgage note. Subsequently, the Board of Directors approved the following loans to Mr. Colón: $1,500 on April 14, 1954; $1,000 on January 12, 1956; $4,200 on May 23, 1956 and $1,900 on November 13, 1957, in all of which the mortgage note to the bearer was mentioned as collateral.

▮ Thus the trial court did not err in deciding that the Bank was the holder of the mortgage note prior to the entry in the Registry of the notice of divorce.

We have to decide now, within the third assignment of error, whether the Bank had knowledge through its agent, Santoni, of the fraud supposedly committed by Rosario Chico

---

[7] On the date of the trial Santoni was not an employee of said Bank.

[8] According to the testimony of Esteban Bird, Vice President of Banco Crédito, the Manager of Arecibo Branch was authorized to lend up to $5,000. Any loan in excess of said amount must be previously approved by the Board of Directors of the Bank.

130

and Amado Colón. There is no specific finding of the commission of the fraud but the trial judge decided that several aspects of the lenghty and complicated evidence introduced in the case led to suspect that Amado Colón bought the joint interest of the Oliver Building in his sister's name when he was already separated from his wife.[9]

Supposing that the evidence were sufficient to establish the fraud,[10] it should be determined, first, whether Santoni had knowledge of said fraud and, second, if he had said knowledge when he was not an agent of the Bank, whether said knowledge is imputable to said Bank.

■ The facts which may furnish basis to the imputation that Santoni had knowledge of the supposed fraud are the following: as husband of one of the vendors of the Oliver Building, Santoni intervened actively in the sale of said building in the year 1946; he was one of the witnesses to the deed of power of attorney executed in favor of Amado Colón by

---

[9] "This evidence— the trial court stated—is the following:

"(1) High selling price of the Oliver Building.

"(2) Rosario Chico's low salary and the fact that she failed to have money in the banks to pay for the joint interest.

"(3) Amado Colón's apparent solvency on the date of the sale of the Oliver Building.

"(4) The administration of the Oliver Building by Amado Colón.

"(5) The granting of power of attorney by Rosario Chico in favor of Amado Colón.

"(6) Detail of the record of scientific assessment in which Amado Colón appeared as owner and which years later was crossed-out in pencil at his request.

"(7) Amado Colón's participation in preliminary conversations of the sale of the Oliver Building.

"(8) Execution by Amado Colón as Rosario Chico's attorney in fact of the mortgage note to bearer over her joint interest and having used it as surety to obtain a loan."

[10] Fraud is never presumed. Although the evidence for fraud cannot be as direct and strong as generally required to prove other extremes, it must be sufficiently solid, clear and convincing so that the court may feel no hesitancy in making a finding of fact which is on the borderline of a criminal act. *Feliciano* v. *Cedeño*, 78 P.R.R. 37 (1955); *Nine* v. *Ortiz*, 67 P.R.R. 883 (1947); *Serrano* v. *Torres*, 61 P.R.R. 157 (1942); *González* v. *Rivera*, 42 P.R.R. 304 (1931).

Rosario Chico; he had been a life friend of Colón; and Santoni, as manager of the Arecibo Branch, was the one to receive the mortgage note in the year 1951.

We agree with the trial judge that said facts are not sufficient to charge Santoni with the knowledge of fraud committed by Colón, accepting, *arguendo*, that it had been committed.

Since we shall not disturb said conclusion it is unnecessary to decide whether the supposed knowledge which Santoni had acquired about the fraud was imputable to the Bank.[11]

The fourth assignment is predicated on that (1) the trial judge denied appellant a reasonable opportunity to prepare her defense, and (2) in denying the admission of the pertinent essential evidence which proved the commission of the fraud.

■ As to the first point appellant's counsel alleges that he did not have a reasonable opportunity to prepare his defense because he took charge of the case on February 1, 1960 and the trial was held on February 12 of the same year after a motion for dismissal filed on the 12th was denied.

He is not right. The record shows that the trial started on August 25, 1958. Appellant was represented from the commencement of the action until January 18, 1960, when attorneys Ramos Antonini and Álvaro Ortiz withdrew as counsel. On January 27 of said year the resignation of said attorneys was accepted and appellant was granted five days to obtain a new legal representation, the hearing having also been set for February 12. The present appellant's counsellor took charge of the case on the first of February. On the 12th of said month, date on which the trial commenced, two witnesses for the Bank testified, Santoni and Goitía. Both were

---

[11] As to whether knowledge of an agent acquired prior to the existence of the agency, may be chargeable to the principal, see 3 Am. Jur.2d § 279 and 3 C.J.S. 206, § 274.

submitted to an extensive cross-examination by appellant's counsel. The hearing of the case continued on *March 3, 1960, March 24 of the same year* and *April 21, 1960*. Moreover, at the commencement of the trial, on the first day, the judge ruled that defendant could introduce evidence on a subsequent date and, likewise, she could subsequently cross-examine any witness for the Bank who may testify on said day, if she so decided. Therefore we cannot agree with appellant's counsel that he did not have sufficient time to prepare the defense of his case, apart from the fact that the record does not show the alleged lack of preparation.

■ The contention that appellant was deprived of her property without the due process of law is predicated on the nonadmission of a certain evidence. Appellant cited the Bank inspector of the Government of Puerto Rico and the United States apparently seeking to show that the Bank had acquired the mortgage note subsequent to the petition for divorce entry in the Registry of Property. The bank inspectors appeared and they alleged that they could not testify as to this fact because the information they obtained from auditing the bank was confidential and they could not reveal it. They invoked the statutes which so provide. The Bank on its part stated that it had requested said information and the inspectors had refused to give it. The judge supported the inspectors and they did not testify. There is nothing in the record to show that the inspectors would introduce evidence to the effect that the Bank acquired the mortgage note subsequent to the entry of the petition for divorce in the Registry of Property. Goitía testified that he is the custodian of the note and that he has been seeing it because every year he shows it to the inspectors; moreover, there is sufficient documentary and reliable evidence in the record to show that the Bank acquired the note prior to the entry of the petition for divorce

in the Registry. Therefore, in the event that the error was committed, it would not be reversible.[12]

The other contention as to the refusal of the trial judge to permit her to establish by means of the record of collaterals of the Bank that it had not acquired the note prior to September 6, 1956, lacks merits.

## Writ of Certiorari

We already know that codefendant Mrs. Ávila filed a motion under Rule 49.2 of the Rules of Civil Procedure requesting to be relieved from the judgment. She based her motion on newly discovered evidence which showed (1) that the Bank was not the holder of the note prior to September 5, 1956 because said note was presented in evidence by Rosario Chico and Colón in an incident for support in the divorce action on January 17, 1957, which showed that on that date the note was in possession of Colón and not of the Bank, and (2) that in the event that the Bank were the holder of the note since the year 1951, said Bank had been a party in the action for divorce because John Doe and Richard Roe were joined therein as defendants and were served notice by edicts, as unknown holders of the note and therefore the Bank was affected by a decision rendered by Judge Cancio in said suit on February 6, 1957 in which the judge decided that the joint interest of one-half of the Oliver Building belonged to Amado Colón and not to Rosario Chico.

After hearing the parties the trial court entered an order, now on review, dismissing said motion.

---

[12] As to the admissibility of evidence obtained by the bank inspectors in the scope of their official duties see the annotations in 123 A.L.R. 1278; 165 A.L.R. 1302, 1320; 70 A.L.R.2d 240; 32 A.L.R.2d 391; VIII Wigmore, Evidence 780, 791, § 2377; *State* v. *Murphy*, 175 A.2d 622; *N.L.R.B.* v. *Capitol Fisch Co.*, 294 F.2d 868, 872; *U.S.* v. *Ragen*, 340 U.S. 462; *Reed* v. *Franke*, 297 F.2d 17, 25; *U.S.* v. *Reynolds*, 345 U.S. 1; *Boske* v. *Comingore*, 177 U.S. 459; *Ex parte French*, 47 A.L.R. 688.

134

Rule 49.2 of Civil Procedure provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a judgment, order, or proceeding for the following reasons:

"(1) . . . . . .

"(2) Newly discovered essential evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 48; . . . ."

■ The essential evidence which could not be discovered prior to the filing of the notice of appeal consists in the presentation of the mortgage note as evidence in the trial held on January 17, 1957 in the divorce suit.

Apart from the frivolity of the contention that appellant could not be charged with knowledge of said fact because it dealt with a situation of evidence which was too technical, it appears from the transcript of the evidence that her counsel, Mr. Soltero Peralta, had knowledge of said supposed new evidence.[13]

---

[13] We copy the following from the transcript of the evidence, pp. 109, 110 and 111:

"Mr. Soltero:

"Your Honor, to introduce in evidence . . . it is not, it is already presented in evidence, Your Honor, this is the power of attorney granted . . .

A. That is what I was requested to bring; let us see if it is that . . .

Q. No, I think we have it. No, it is the note to bearer which was introduced in evidence in the civil case, it does not say anything about the power of attorney, the note to bearer which was introduced in evidence in civil case No. 56-3206.

A. Explain yourself, I did not understand.

Q. You know you were summoned to a hearing in this case of divorce requesting you to bring a note to bearer.

A. Yes, sir.

Q. On that occasion you brought it, or did Amado bring it, if you remember, what you can remember?

A. I do not remember.

Q. You do not remember.

A. Maybe Amado has it.

Q. Nevertheless you refer now to a note that . . .

A. To a power of attorney, maybe I misinterpreted what the summons say.

■ Let us turn to the other point. In her second amended petition for divorce Mrs. Ávila included John Doe and Richard Roe as defendants and holders of a mortgage note to the bearer which encumbered the Oliver Building. But it was stated in the complaint and in the summons by edicts that said note was of August 13, 1946. The Bank was not the holder of a note of said date encumbering the Oliver Building. The note it possessed and executed was of August 13, 1951. Therefore, it cannot be correctly affirmed that the Bank was a party in the divorce suit. On the contrary it was a third party which was not affected by the decision of Judge Cancio over the dominion title of the one-half joint interest of the Oliver Building.[14]

---

Q. Yes, but on that occasion you were not summoned?
A. This was the same thing, that was what I brought . . .
Q. Did you not bring a note which was introduced in evidence?
A. Yes, sir.
Q. That note and that deed which were introduced in evidence, did you or Amado bring them?
A. On that occasion?
Q. On that occasion?
A. I do not remember.
Q. You do not remember?
A. I do not remember about the power of attorney.
Mr. Ortiz:
Let her answer, let her explain.
Mr. Soltero:
The purpose is to gain time, she answered already.
A. But I want to make it clear, what I brought to the other trial was the deed, you remember, and this, that was all the documents I brought.
Q. And that deed to which you referred?
A. The deed of the Oliver Building.
Q. Of the Oliver Building?
A. Yes, sir.
Q. Is that all you brought?
A. That is all they told me and that was what I brought.
Q. But you do not answer the question . . . you do not have any note to bearer?
A. No, sir.
Q. That is all." (Tr. Ev. 109, 110, and 111.)

[14] In addition we must state that the decision of Judge Cancio limited its effects to the motion for support and did not make a final adjudication

For the reasons stated the writ of certiorari will be set aside and the judgment object of review will be affirmed.

---

of the title of a joint interest of half of the Oliver Building. Let us see, insofar as pertinent, the record of the hearing held in the case of divorce:

"Hon. Judge:

"The decision is the following: The court cannot determine now in a way to compel said person in whose name said property appears recorded, whether the property does or does not belong to said person. But in respect to her, yes, it can determine. It can make a decision which is not binding on said third person, because it is not a party. The Court can reach a conclusion, as to whether he receives that rent or not, if the appropriate evidence is presented.

"Mr. Pérez Casalduc:

"That is what we want.

"Mr. Abreu:

"But that would not be a decision anticipating the liquidation of the conjugal partnership.

"Hon. Judge:

"In the controversy for support plaintiff is entitled to show the income and property owned by the other party. But if the defendant alleges that that it is not his, that it belongs to a third person, the Court could reach a conclusion for the purpose of this motion we are examining and finally as to the title of ownership it cannot bind a third party which is not a party in the proceeding; but it can reach a decision for the purpose of determining the support. You may proceed.

"Mr. Pérez Casalduc:

"Q. Then the question is supported?

"Hon. Judge:

"You may proceed. According to what I just decided, that is, fixing the maintenance pension exclusively. It has no more scope." (Tr. Ev. Defendant's Exh. 60, pp. 33–34.)