707 A.2d 1100

ANDREW CARGULIA, PLAINTIFF, v.
ROSE CARGULIA, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Monmouth County

Decided April 12, 1996.

650

*Linda G. Alfonso*, for plaintiff (*Heilbrunn, Finkelstein, Heilbrunn, Alfonso, Goldstein & Pape*, attorneys).

*James P. Yudes*, for defendant.

*Susan C. Cassell*, for Internal Revenue Service (*Faith Hochberg*, United States Attorney).

FISHER, J.S.C.

## I

### *INTRODUCTION*

Presented during the trial of this case is an unusual problem concerning whether or to what extent a state court may compel the production of relevant testimony from the United States.

## II

### *PROCEDURAL HISTORY*

The dispute at hand involves defendant Rose Cargulia's ("Mrs. Cargulia") attempt to obtain an upward modification of the alimony obligation imposed on plaintiff Andrew Cargulia ("Mr. Cargulia") by way of a judgment of divorce entered on August 6, 1985. An earlier order scheduled a plenary hearing to resolve the factual dispute. In order to demonstrate that Mr. Cargulia's income and earning capacity are greater than he previously claimed, Mrs. Cargulia served a subpoena on the Internal Revenue Service ("IRS"). Prior to the hearing, the IRS had audited (and continues to audit) Mr. Cargulia's personal income tax returns, as well as those of his solely-owned corporation, A.C. Dental Labs ("the business"), for the years 1990, 1991, 1992 and 1993. The conclusions reached by the field auditor suggest that Mr. Cargulia vastly unreported his income for the aforementioned years.

Upon her appearance at the plenary hearing, IRS Agent Melissa Smith, who was also represented by counsel, refused to provide any testimony until Mr. Cargulia expressly waived his right to have such information remain confidential. He waived that right. Agent Smith then testified at length concerning what the investigation of the IRS revealed.

On cross-examination, Mr. Cargulia's counsel sought to elicit testimony from Agent Smith regarding the source of the information which led to the IRS decision to investigate Mr. Cargulia and his business. The IRS refused to provide any testimony beyond

that which related to the audits in question. Mr. Cargulia requested that the court direct Agent Smith to provide this additional information, which the IRS resisted and continues to resist.

The IRS and the parties to this case were invited to brief the issues, namely: (1) whether the IRS was justified in refusing to divulge the source of the information which led to its pursuit of Mr. Cargulia; and (2) whether a state court may make a determination that the information is not confidential and, if so, whether a court may compel disclosure. Before reaching these issues some commentary on the relevance of this information is helpful to a full understanding of the matter.

## III

### *THE RELEVANCE OF THE SOURCE INFORMATION*

Mrs. Cargulia's claim for an upward modification of the 1985 permanent alimony award is based on *Guglielmo v. Guglielmo,* 253 *N.J.Super.* 531, 602 *A.*2d 741 (App.Div.1992). In *Guglielmo,* according to Mrs. Cargulia, the court found that the power to modify an alimony award exists not only when the payee spouse has encountered a change in circumstances which makes equitable, after a review of all the relevant factors, an increase in alimony, but also when the payor spouse's earning capacity can bear an increase. Thus, according to this theory, a payee spouse is entitled to enjoy the benefit of the increase in the payor's financial picture to the extent it was the "momentum of the marriage" which brought it about:

Where a family's expenditures and income had been consistently expanding, the dependent spouse should not be confined to the precise lifestyle enjoyed during the parties' last year together. Defendant's income picture should be viewed with an eye toward the future, since it was to this *potential* that both parties contributed during the marriage. When existing earning potential of the working spouse may be shared by the spouse who kept the home, and that standard of living should be implemented through an adequate alimony award.

[253 *N.J.Super.* at 543–544, 602 *A.*2d 741 (emphasis in the original).]

In this case, Mrs. Cargulia seeks an increase in alimony in order, she contends, to allow her to enjoy the fruits generated by the "momentum" of their marriage. To rebut this, Mr. Cargulia argues that Mrs. Cargulia was not an active contributor to the "momentum" of the marriage. He seeks to prove that she was then and remains an albatross around the neck of their long-since failed marital partnership. He plans on showing this by proving, among other things, that it was Mrs. Cargulia who planted the seeds which led the IRS to pursue Mr. Cargulia and his business. Rather than providing "momentum," so argues Mr. Cargulia, his ex-wife has set up a roadblock which will now constitute a substantial impediment to any present or future financial momentum.

Relevant evidence is that which has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." *N.J.R.E.* 401. Certainly, in light of that broad definition and the substantive law to be applied, there can be no question of the relevancy of the evidence sought by Mr. Cargulia.

## IV

### *IS THE IRS ENTITLED TO KEEP ITS CONFIDENTIAL SOURCE SECRET?*

To answer this question the court should first look to the statutory basis asserted by the IRS as a bar to disclosure. The IRS has referred to 26 *U.S.C.* § 6103(h)(4) which states:

A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—

. . . .

(B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;

(C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding;

. . . .

However, such return or return information shall not be disclosed as provided in subparagraph (A), (B), or (C) if the Secretary determines that such disclosure

would identify a confidential informant or seriously impair a civil or criminal tax investigation.

In opposition to Mr. Cargulia's request for additional information, the IRS asserts that (1) disclosure would interfere with the administration of federal tax law and (2) this court is not empowered to compel further production. While the IRS's first argument appears dubious under the circumstances, the second has merit and bars the entry of an order compelling disclosure.

### *A. The Administration of Federal Tax Law*

■ Mr. Cargulia seeks confirmation from the IRS that it was Mrs. Cargulia who was the IRS's confidential source. While Mrs. Cargulia has consented to the disclosure of information relating to her involvement, the IRS has not. Inherent in the IRS's resistance is its concern for the privacy rights of the individuals whose identities may be revealed in public records and the chilling effect that such a revelation may have on its ability to enforce the tax laws in the future. *See, Whalen v. Roe,* 429 *U.S.* 589, 598–600, 97 *S.Ct.* 869, 875–877, 51 *L.Ed.*2d 64 (1977).

■ With respect to the former, it has long been recognized that an individual has the right "of determining, ordinarily, to what extent his thoughts, sentiments and emotions shall be communicated to others." Warren & Brandeis, "The Right of Privacy," 4 *Harv.L.Rev.* 193, 198 (1891). This right somewhat fades when the information involved already appears in the public record. *Cox Broadcasting Corp. v. Cohn,* 420 *U.S.* 469, 494–495, 95 *S.Ct.* 1029, 1045–1046, 43 *L.Ed.*2d 328 (1975). In this respect, Mr. Cargulia argues, first, that Mrs. Cargulia's identity as the source has already been revealed, albeit inferentially, through her testimony. The IRS correctly argues that disclosure is not permitted merely because the information may have been disclosed in other settings. *See, Dep't. of Justice v. Reporters Committee for Freedom of the Press,* 489 *U.S.* 749, 762–763, 109 *S.Ct.* 1468, 1476–1477, 103 *L.Ed.*2d 774 (1989); *Jones v. F.B.I.,* 41 *F.*3d 238, 246–247 (6th Cir.1994). None of the cases cited by the IRS, however, presented a situation where the person whose privacy interests

were at stake had consented to disclosure. What renders a source confidential is the source's providing of information "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *U.S. Dept. of Justice v. Landano,* 508 *U.S.* 165, 172, 113 *S.Ct.* 2014, 2019, 124 *L.Ed.*2d 84 (1993). Mrs. Cargulia's consent to disclosure dispels any government concern that it has breached that understanding or failed to protect any privacy interest possessed by Mrs. Cargulia.

The second aspect to the IRS's resistance to disclosure is the potential impact on its ability to investigate violations of the tax laws. It is argued that permitting the identification of confidential sources could impact upon the availability of future informants. That is a valid concern as a general matter, but it is hard to understand how a future informant might be deterred from coming forward by, in this instance, the IRS's acceding to an informant's willingness to allow disclosure.

Under the circumstances, the IRS's argument against disclosure is not compelling.[1] Mr. Cargulia's position appears meritorious. However, for the reasons set forth below, the court is not empowered to vindicate it.

### B. The Power of this Court to Compel Disclosure

What is compelling is the argument that this court lacks the authority to require disclosure. In wrestling with this problem, the court is required to answer three discrete questions: (1) has the United States consented to being sued for the disclosure of documents or information in its possession?; (2) is the request for an order compelling the United States to provide such information

---

[1] Since the IRS has not raised it, the court intimates no opinion on whether the IRS could have refused to disclose this information because this post-judgment matrimonial dispute does not pertain to "tax administration," 26 *U.S.C.* § 6103(h)(4), as that phrase is defined in 26 *U.S.C.* § 6103(b)(4).

a "suit"?; and (3) has the United States consented to being so "sued" in state court?

### 1. Has the United States Consented to Being Sued for the Disclosure of Documents or Information in its Possession?

▆▆▆▆ The sovereign—here, the United States—may not be subjected to legal action without its consent. *F.D.I.C. v. Meyer,* 510 *U.S.* 471, 474, 114 *S.Ct.* 996, 1000, 127 L.Ed.2d 308 (1994); *United States v. Testan,* 424 *U.S.* 392, 399, 96 *S.Ct.* 948, 953, 47 *L.Ed.*2d 114 (1976). That consent shields not only the federal government but also its agencies. *Meyer, supra.* The consent to be sued can be given only by Congress and not by any member of the Executive branch of the federal government. *Lehman v. Nakshian,* 453 *U.S.* 156, 160–161, 101 *S.Ct.* 2698, 2701–2702, 69 *L.Ed.*2d 548 (1981); *Stanley v. Schwalby,* 162 *U.S.* 255, 269–270, 16 *S.Ct.* 754, 760–761, 40 *L.Ed.* 960 (1896). Congress likewise has the sole power to select the court it may be summoned to and may prescribe or limit the manner of suit. *McElrath v. United States,* 102 *U.S.* 426, 440, 26 *L.Ed.* 189 (1880). It may also declare that the issues over which it may be sued not be tried to a jury. *Lehman, supra,* 453 *U.S.* at 160–161, 101 *S.Ct.* at 2701–2702. The "limitations and conditions" upon which the United States consents to be sued "must be strictly observed and exceptions thereto are not to be implied." *Lehman, supra,* 453 *U.S.* at 161, 101 *S.Ct.* at 2702; *Soriano v. United States,* 352 *U.S.* 270, 276, 77 *S.Ct.* 269, 273, 1 *L.Ed.*2d 306 (1957).

▆▆▆▆ The United States has, in fact, consented to being sued for the disclosure of such information. 26 *U.S.C.* § 6103 may suggest that a great deal of IRS materials and information are not available to the public and thus such actions on their merits may not always be successful. But there is nothing about that particular statute which suggests that such a claim is not cognizable. In fact, the contrary is true.

The non-disclosure provisions of 26 *U.S.C.* § 6103 must be viewed in light of the Freedom of Information Act (5 *U.S.C.* § 552) which "strongly favors disclosure," *Aronson v. I.R.S.*, 973 *F.*2d 962, 966 (1st Cir.1992), and the very purpose of which is "to open agency action to the light of public scrutiny," *Dep't. of Air Force v. Rose*, 425 *U.S.* 352, 372, 96 *S.Ct.* 1592, 1604, 48 *L.Ed.*2d 11 (1976). *See also, Reporters Committee, supra*, 489 *U.S.* at 772, 109 *S.Ct.* at 1481; *Dep't. of Justice v. Tax Analysts*, 492 *U.S.* 136, 142, 109 *S.Ct.* 2841, 2846, 106 *L.Ed.*2d 112 (1989). The exemptions of the Freedom of Information Act ("FOIA") are narrowly drawn in favor of its "general philosophy of full agency disclosure," *Rose, supra*, 425 *U.S.* at 360, 96 *S.Ct.* at 1599, and courts have generously interpreted its disclosure provisions, as then Judge (now Justice) Breyer has said, "in order to achieve the FOIA's basic aim: sunlight," *Aronson, supra*, 973 *F.*2d at 966.

26 *U.S.C.* § 6103 and the FOIA must be read together. It is apparently now understood that the former is the "sort of statute" referred to in 5 *U.S.C.* § 552(b)(3) of FOIA as relating to matters "specifically exempted from disclosure by statute." *Church of Scientology of California v. I.R.S.*, 484 *U.S.* 9, 11, 108 *S.Ct.* 271, 273, 98 *L.Ed.*2d 228 (1987). If 26 *U.S.C.* § 6103 forbids the disclosure of material, then it may not be produced in response to a request under the FOIA. *Id.* However, the question is not whether Mr. Cargulia could ultimately obtain disclosure in a FOIA action but rather whether he may have the IRS summoned to appear in court to respond to such a claim. The existence of the FOIA, and the universal understanding that the availability of information from the IRS is an issue which may be resolved through a FOIA action, demonstrates that the United States has consented to being sued for such relief.

### 2. Is the Request for the IRS's Compliance with the Subpoena a "Suit"?

As noted earlier, the IRS is involved in this litigation by way of its initial compliance with a subpoena served upon it by Mrs.

Cargulia. The IRS has not been joined as a "party" to this action, not even nominally.

But, in the context of the sovereign immunity argument raised, whether the United States is a party to an action is controlled by "the question of the effect of the judgment or decree which can be entered." *Kansas v. United States*, 204 *U.S.* 331, 341, 27 *S.Ct.* 388, 391, 51 *L.Ed.* 510 (1907). Here, should the court rule that the information sought by Mr. Cargulia must be provided by the IRS, such a ruling would, in the IRS's view, affect its ability to administer the tax laws, cause the IRS agent to potentially face criminal liability, 26 *U.S.C.* § 7213, and, upon any failure to comply, cause the IRS and its agent to face the powers of this court to coerce compliance. Certainly, the effect of any enforcement order of this court on the subject matter of the subpoena could conceivably affect the interests of the United States, the IRS and Agent Smith.

Our own Supreme Court has specifically recognized that a proceeding against a non-party for the production of documents or information, "whether the proceeding originate by subpoena or some more plenary process, becomes a 'suit' in every real sense when the third party disputes the right asserted." *State v. Murphy*, 36 *N.J.* 172, 185, 175 *A.*2d 622 (1961) (Weintraub, C.J.). Because the IRS has refused to comply, Mr. Cargulia's request for an order from this court compelling the IRS agent to provide certain information must be viewed, for purposes of a sovereign immunity analysis, as a "suit" against the United States.

### 3. Has the United States Consented to Being Sued in State Court?

The United States, of course, can choose not only what it may be sued for but also the manner in which it may be sued and, most importantly for purposes of the problem to be resolved herein, *where* it may be sued. *See, McElrath, supra; Stanley v. Schwalby*, 162 *U.S.* 255, 270, 16 *S.Ct.* 754, 760, 40 *L.Ed.* 960 (1896). Congress has determined that the IRS may be sued by way of the

FOIA for materials in its possession; it has not, however, determined that a FOIA action against the IRS may be commenced or maintained in State Court.[2]  5 *U.S.C.* § 552(a)(4)(B) expressly states that actions for relief under the FOIA must be brought in the district courts of the United States, an expression which not only negates the maintenance of such an action in state court but in other federal courts as well.[3]

A waiver of immunity must be "unequivocally expressed," *United States v. Mitchell,* 445 *U.S.* 535, 538, 100 *S.Ct.* 1349, 1351, 63 *L.Ed.*2d 607 (1980), and the conditions placed on such a waiver "must be strictly observed and exceptions thereto are not to be implied," *Soriano, supra,* 352 *U.S.* at 276, 77 *S.Ct.* at 273.  Congress has unequivocally stated that it may be sued for such relief only in federal district court; that condition must be strictly observed and no exception to it may, upon rational analysis, be found.

# V

## *CONCLUSION*

Mr. Cargulia suggests that there is something particularly disturbing in this case.  The IRS was certainly quite ready, willing and able to testify when asked about the audits it performed on Mr. Cargulia and his business.  The IRS could have refused to provide any testimony by asserting that the "return information," *see,* 26 *U.S.C.* § 6103(b)(2), sought by Mrs. Cargulia did not

---

[2] The Court in *Stanley* observed that while the United States has consented to be sued in a number of areas by various acts of Congress, it has "never consented to be sued in the courts of a state in any case."  162 *U.S.* at 270, 16 *S.Ct.* at 760.  This court is unaware that anything has changed in the 100 years that have passed since the Court made that statement.

[3] It has been determined, for example, that such an action may not be commenced in the United States Court of Claims, *see, Rogers v. United States,* 15 *Cl.Ct.* 692 (1988), nor may the United States Courts of Appeals exercise original jurisdiction over such a matter, *see, Echols v. National Labor Relations Board,* 525 *F.*2d 288 (6th Cir.1975).

"pertain[ ] to tax administration," *see*, 26 *U.S.C.* § 6103(h)(4), or for the reasons expounded upon in Part IV above. That the IRS did not complain of Mrs. Cargulia's inquiries but became reticent and raised all available barriers to Mr. Cargulia's probing is of interest.

This may appear inequitable but Mr. Cargulia could have alleviated some of the disadvantage of the situation. He could have refused to waive his right of confidentiality regarding the testimony concerning the audits (which would have barred any testimony from Agent Smith) or he could have commenced a FOIA action in federal district court to obtain the information now sought, or both. In any event, this court is not in a position to ameliorate the disadvantage. This court has no power to order the United States to provide any information other than what it has chosen to provide.[4]

The relief sought by Mr. Cargulia is denied.

---

[4] Mr. Cargulia has alluded to *Lynch v. Clymer*, 282 *N.J.Super.* 301, 660 *A.2d* 3 (App.Div.1995) as support for this court's engaging in a balancing of the competing interests in this case without concern for sovereign immunity. What Mr. Cargulia did not observe in his brief is that our Supreme Court remanded that matter for further proceedings in the Law Division. *Lynch v. Clymer*, 142 *N.J.* 441, 663 *A.2d* 1351 (1995). Also, that case involved a dispute between the legislative and executive branches of the state government and did not, at least directly, involve the United States.